# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

BARAK CHACOTY, *et al.*

    *Plaintiffs*,

    v.

JOHN KERRY, Secretary of State, *et al.*,

    *Defendants*.

_____

)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 14-764-RDM

## MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

GLENN M. GIRDHARRY
Assistant Director

JOSHUA S. PRESS
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section

*Attorneys for Defendants*

## TABLE OF CONTENTS

INTRODUCTION...........................................................................................................1

STATUTORY BACKGROUND ....................................................................................3

FACTS AND COURSE OF PROCEEDINGS ..............................................................9

      A.     Plaintiff Kenton Neil Manning ........................................................9

      B.     The Sitzman Plaintiffs ......................................................................9

      C.     The Other Plaintiffs in Israel .........................................................12

      D.     The Plaintiffs' Civil Action ............................................................13

ARGUMENT .................................................................................................................13

I.      Without Sufficient Facts, The Plaintiffs' Complaint Must Be Dismissed Under Rule 12(b)(6)..........................................................................................................16

II.     There Are Inadequate Facts To Provide The Court With Jurisdiction Under Section 1503. ......................................................................................................19

      A.     The Absence of Jurisdictional Facts Deprives the Court of Jurisdiction .......20

III.    Plaintiffs' Other Bases for Jurisdiction Are Unfounded............................24

      A.     The Mandamus Act...........................................................................24

      B.     The APA.............................................................................................26

             i.     Final Agency Action...............................................................27

             ii.    Whether Section 1503 Provides Adequate Relief Under Cort.............29

      C.     The Declaratory Judgment Act ........................................................31

IV.    Without More Facts, It Is Impossible To Determine The Proper Defendant ...........33

V.     Many Of The Plaintiffs' Claims Are Barred Under The Statute Of Limitations......35

**VI.      The Plaintiffs' Potential *Bivens* Claims Are Similarly Time Barred And Inadequately Pleaded**...................................................................................................36

**CONCLUSION** ...........................................................................................................38

**CERTIFICATE OF SERVICE** ................................................................................39

## TABLE OF AUTHORITIES

### CASE LAW

*Abbott Labs. v. Gardner*,
  387 U.S. 136 (1967) ............................................................................. 28, 30

*Acosta v. United States*,
  2014 WL 2216105 (W.D. Wash. May 29, 2014) ................................... 22

*Aetna Life Ins. Co. v. Haworth*,
  300 U.S. 227 (1937) ................................................................................. 31

*Almonte v. Holder*,
  380 Fed. App'x 351 (4th Cir. 2010) ....................................................... 20

*Arbaugh v. Y & H Corp.*,
  546 U.S. 500 (2006) ........................................................................... 22, 32

*Ashcroft v. Iqbal*,
  556 US 662 (2009) ....................................................................... 14, 31, 33

*Avina v. Brownell*,
  112 F. Supp. 15 (S.D. Tex. 1953) ...................................................... 7, 23

*Barreiro v. McGrath*,
  108 F. Supp. 685 (N.D. Cal. 1952) ......................................................... 20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................... 16, 17

*Bennett v. Spear*,
  520 U.S. 154 (1997) ........................................................................... 27, 29

*Bensky v. Powell*,
  391 F.3d 894 (7th Cir. 2004) ....................................................... 19, 20, 24

*Bivens v. Six Unknown Federal Narcotics Agents*,
  403 U.S. 388 (1971) ................................................................................. 36

*Blind of Del. Cnty. Valley, Inc. v. Regan*,
  709 F.2d 1521 (D.C. Cir. 1983) .............................................................. 27

*Boggiano v. Att'y Gen. of U.S.*,
  429 Fed. App'x 162 (3d Cir. 2011) ......................................................... 20

*Bowen v. Commonwealth of Massachusetts*,
   487 U.S. 879 (1988) ................................................................. 26, 34

*Califano v. Sanders.*,
   430 U.S. 99 (1977) ................................................................... 29, 30

*Carducci v. Regan*,
   714 F.2d 171 (D.C. Cir. 1983) .......................................................... 33

*Cartier v. Sec'y of State*,
   356 F. Supp. 460, (D.D.C. 1973) ........................................................ 25

*Cartier v. Sec'y of State*,
   506 F.2d 191 (D.C. Cir. 1974) ................................................... 1, 25, 35

*Cavazos v. Kerry*,
   2016 WL 4126142 (N.D. Tex. Aug. 3, 2016) ............................................... 29

*Christopher Village, L.P. v. United States*,
   360 F.3d 1319 (Fed. Cir. 2004) ......................................................... 34

*Citizens to Preserve Overton Park v. Volpe*,
   401 U. S. 402, 91 S. Ct. , 28 L. Ed. 2d 136 (1971) .................................... 30

*Correia v. Dulles*,
   129 F. Supp. 533 (D.R.I. 1954) .......................................................... 7

*Dresser v. Meba Med. & Benefits Plan*,
   628 F.3d 705 (5th Cir. 2010) ........................................................... 26

*DRG Funding Corp. v. Sec'y of Housing and Urban Dev.*,
   76 F.3d 1212 (D.C. Cir. 1996) .......................................................... 28

*DSMC, Inc. v. Convera Corp.*,
   349 F.3d 679 (D.C. Cir. 2003) .......................................................... 14

*Dulles v. Nathan*,
   225 F.2d 29 (D.C. Cir. 1955) ..................................................... 7, 13, 12

*D'Argento v. Dulles*,
   113 F. Supp. 933 (D.D.C. 1953) .......................................................... 7

*El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Human Servs.*,
   396 F.3d 1265 (D.C. Cir. 2005) ......................................................... 26

*Ewell v. U.S. Dep't of Just,*
   153 F. Supp. 3d 294 (D.D.C. 2016) ..................................................................... 37

*FDIC v. Meyer,*
   510 U.S. 471 (1994) ............................................................................................. 34

*Ficano v. Dulles,*
   151 F. Supp. 650 (E.D.N.Y. 1954) ........................................................................ 7

*Graham v. Ashcroft,*
   358 F.3d 931 (D.C. Cir. 2004) ............................................................................. 33

*Hagmeyer v. Dep't of Treasury,*
   647 F. Supp. 1300 (D.D.C. 1986) ........................................................................ 37

*Haig v. Agee,*
   453 U.S. 280 (1981) ............................................................................................. 26

*Harake v. Dulles,*
   158 F. Supp. 413 (E.D. Mich. 1958) ..................................................................... 7

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982) ............................................................................................. 37

*Harris v. FAA,*
   353 F.3d 1006 (D.C. Cir. 2004) ........................................................................... 36

*Hassan v. Holder,*
   793 F. Supp. 2d 440 (D.D.C. 2011) ............................................................... 17, 29

*Heckler v. Ringer,*
   466 U.S. 602 (1984) ............................................................................................. 25

*Henry v. Quarantillo,*
   684 F. Supp. 2d 298 (E.D.N.Y. 2010) ................................................................. 22

*Herbert v. Holder,*
   2010 WL 5125318 n.1 (D.D.C. 2010) ................................................................. 24

*Huerta v. Ducote,*
   792 F.3d 144 (D.C. Cir. 2015) ............................................................................. 32

*Icaza v. Shultz,*
   656 F. Supp. 819 (D.D.C. 1987) ............................................................................ 8

*Kahane v. Sec'y of State*,
   700 F. Supp. 1162 (D.D.C. 1988) ........................................................................ 7

*Maldanado v. Clinton*,
   2015 WL 1519636 (S.D. Ga. Mar. 31, 2015) ...................................................... 37

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   132 S. Ct. 2199 (2012) ........................................................................................ 35

*Mendoza v. Perez*,
   754 F.3d 1002 (D.C. Cir. 2014) .......................................................................... 36

*Minneci v. Pollard*,
   132 S. Ct. 617 (2013) .......................................................................................... 37

*Nevarez v. Brownell*,
   218 F.2d 575 (5th Cir. 1955) ................................................................................ 7

*Ng Fung Ho v. White*,
   259 U.S. 276 (1922) .............................................................................................. 4

*Okere v. United States of Am. Am. Citizens Servs.*,
   2015 WL 3504536 (N.D. Ill. June 2, 2015) ........................................................ 20

*P & V Enters. v. U.S. Army Corps of Eng'rs*,
   516 F.3d 1021 (D.C. Cir. 2008) .......................................................................... 36

*Parham v. Clinton*,
   374 Fed. App'x 503 (5th Cir. 2010) ...................................................................... 7

*Pretka v. Kolter City Plaza II, Inc.*,
   608 F. 3d 744 (11th Cir. 2010) ............................................................................ 31

*Pulido v. Bennett*,
   848 F.2d 880 (8th Cir. 1988) ............................................................................... 33

*Raya v. Clinton*,
   703 F. Supp. 2d 569 (W.D. Va. 2010) ................................................................. 29

*Reaume v. United States*,
   124 F. Supp. 851 (E.D. Mich. 1954) ................................................................... 20

*Reed Elsevier, Inc. v. Muchnick*,
   559 U.S. 154 (2010) ...................................................................................... 21, 22

*Rollins v. Wackenhut Services, Inc.*,
   703 F.3d 122 (D.C. Cir. 2012) ............................................................... 17, 19

*Roman-Salgado v. Holder*,
   730 F. Supp. 2d 126 (D.D.C. 2010) ............................................................... 28

*Rossello v. Marshall*,
   12 F.R.D. 352 (S.D.N.Y. 1952) ............................................................... 35

*Rumsfeld v. Padilla*,
   542 U.S. 426 (2004) ............................................................... 33

*Rusk v. Cort*,
   369 U.S. 367 (1962) ............................................................... *passim*

*Said v. Eddy*,
   87 F. Supp. 2d 937 (D. Alaska 2000) ............................................................... 20

*Savorgnan v. United States*,
   171 F.2d 155 (7th Cir. 1948) ............................................................... 34

*Shelby County, Ala. v. Lynch*,
   799 F.3d 1173 (D.C. Cir. 2015) ............................................................... 21

*Skelly Oil Co. v. Phillips Petrol. Co.*,
   339 U.S. 667 (1950) ............................................................... 31

*State of Alaska v. Federal Energy Regulatory Comm'n*,
   980 F.2d 761 (D.C. Cir. 1992) ............................................................... 28

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ............................................................... 19

*Strupp v. Dulles*,
   163 F. Supp. 790 (S.D.N.Y. 1957) ............................................................... 7

*Sykes v. U.S. Att'y for D.C.*,
   770 F. Supp. 2d 152 (D.D.C. 2011) ............................................................... 37

*Trazell v. Wilmers*,
   975 F. Supp. 2d 133 (D.D.C. 2013) ............................................................... 31

*TRW Inc. v. Andrews*,
   534 U.S. 19 (2001) ............................................................... 23

*U.S. Ecology, Inc. v. U.S. Dep't of Interior*,
   231 F.3d 20 (D.C. Cir. 2003) ........................................................................ 19

*United States v. Fausto*,
   484 U.S. 439 (1988) ...................................................................................... 32

*United States v. Ju Toy*,
   198 U.S. 253 (1905) ........................................................................................ 4

*United States v. Mitchell*,
   445 U.S. 535 (1980) ...................................................................................... 34

*United States v. Mitchell*,
   463 U.S. 206 (1983) ...................................................................................... 34

*United States v. Sherwood*,
   312 U.S. 584 (1941) ...................................................................................... 34

*United Steel, Paper and Forestry, Rubber, Manufacturing v. PBGC*,
   707 F.3d 319 (D.C. Cir. 2013) ...................................................................... 18

*Villarreal v. Horn*,
   — F. Supp. 3d —, 2016 WL 4094708 (S.D. Tex. July 29, 2016) ............... 15, 27, 29

*Wilkie v. Robbins*,
   551 U.S. 537 (2007) ...................................................................................... 37

*Xia v. Kerry*,
   73 F. Supp. 3d 33 (D.D.C. 2014) .............................................................. 28, 29

*Yamamoto v. Dulles*,
   16 F.R.D. 195 (D. Haw. 1954) ....................................................................... 7

*Zipes v. Trans World Airlines, Inc.*,
   455 U.S. 385 (1982) ...................................................................................... 22

## STATUTES

D.C. Code § 12-301(8) .................................................................................... 37

Pub. L. 76 ......................................................................................................... 3

Pub. L. 82-414 .................................................................................................. 7

5 U.S.C. § 702 ................................................................................................. 35

5 U.S.C. § 704 ........................................................................................................ *passim*

8 U.S.C. § 1101(33) ............................................................................................ 37

8 U.S.C. § 1101(a)(33) ...................................................................................... 11, 18

8 U.S.C. § 1401(c) ............................................................................................... *passim*

8 U.S.C. § 1503 .................................................................................................... *passim*

8 U.S.C. § 1503(a) .............................................................................................. *passim*

8 U.S.C. § 1503(b) .............................................................................................. *passim*

8 U.S.C. § 1503(c) .............................................................................................. *passim*

22 U.S.C. § 211a ................................................................................................ 25, 26

22 U.S.C. § 2705 ................................................................................................ 12

28 U.S.C. § 1331 ................................................................................................ 21, 22

28 U.S.C. § 1338 ................................................................................................ 22

28 U.S.C. § 1361 ................................................................................................ 24

28 U.S.C. § 1503(b) ........................................................................................... 15

28 U.S.C. §§ 2201 .............................................................................................. 31

28 U.S.C. §§ 2202 .............................................................................................. 31

28 U.S.C. § 2242 ................................................................................................ 33

28 U.S.C. § 2401(a) ........................................................................................... 35

52 U.S.C. § 10310(b) ......................................................................................... 21

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12 ............................................................................................... 24

Fed. R. Civ. P. 12(b)(1) .................................................................................... 1, 19, 36

Fed. R. Civ. P. 12(b)(6) .................................................................................... 1

Fed. R. Civ. P. 12(h)(3)...................................................................................................... 34

## LEGISLATIVE HISTORY

H.R. Rep. No. 2379............................................................................................................ 4

H.R. Rep. No. 2816............................................................................................................ 4

H.R. Rep. No. 5678............................................................................................................ 5

S. Rep. No. 81-1515.......................................................................................................... 5

S. Rep. No. 137 ................................................................................................................. 3

S. Rep. No. 2550............................................................................................................... 5

S. Rep. No. 5785............................................................................................................... 6

## MISCELLANEOUS

Dep't of State Cable, 12 State 3735................................................................................ 18

## INTRODUCTION

Plaintiffs bring this action asking the Court to declare the State Department's decisions to either deny or cancel Plaintiffs' Consular Reports of Birth Abroad ("CRBA") applications or passports as violative of the Administrative Procedure Act ("APA"), enjoin the State Department "from continuing to act" in such a manner, order the State Department to issue the CRBAs and passport to Plaintiffs, and grant them attorneys' fees and costs. *See* Plaintiffs' Third Amended Complaint at 33 (ECF No. 28) (hereinafter, "3d Am. Compl." or "the Third Amended Complaint"). Once again, however, all of these requests should be denied, however, as they are designed "to circumvent the remedy specifically provided by the Immigration and Na[tionality] Act" ("INA"), which "provides a specific form of relief for persons claiming to have been improperly denied rights owed them as nationals of the United States—one that can both afford aggrieved persons total relief and at the same time minimize judicial intrusion into the administrative decision-making processes." *Cartier v. Sec'y of State*, 506 F.2d 191, 193, 200 (D.C. Cir. 1974) (applying 8 U.S.C. § 1503) (hereinafter, "Section 1503"). And this is especially true given that the APA would not even provide Plaintiffs with the types of relief mentioned above.

Although Plaintiffs now briefly mention Section 1503, 3d Am. Compl. at ¶ 28, this Court should nevertheless dismiss the Third Amended Complaint for lack of subject-matter jurisdiction and for Plaintiffs' failure to state a claim. *See* Fed. R. Civ P. 12(b)(1), (6). This is because Plaintiffs have still failed to provide *any* facts to comply with basic jurisdictional prerequisites. For example, they have not even pleaded enough facts to indicate that the State Department acted in an arbitrary or capricious manner for the APA relief that they (apparently) continue to

seek. More importantly, however, is how there is nothing in their Third Amended Complaint to indicate that the Plaintiffs are either "person[s] who [are] within the United States" and where they reside under Section 1503(a), or whether they are instead alleging that this Court has jurisdiction under the processes laid out in Section 1503's subsections (b) and (c).

These omissions are important because Section 1503(b) and (c) provide a procedure whereby a plaintiff living abroad who claims a right or privilege as a national of the United States, and is denied such privilege, may request a certificate of identity to travel to and apply for admission to the United States to seek relief.[1] Here, the Plaintiffs state where they live and provide addresses abroad, but otherwise provide no information about whether they are currently "within the United States," and, if so, where they reside for this Court to determine whether it is the appropriate venue under Section 1503's residence clause. And if they are not "within the United States" or reside outside of this district, Plaintiffs provide no information about whether they have taken any of the steps of seeking a certificate of identity to proceed through subsections (b) and (c). Without any of this information in the Third Amended Complaint, this Court lacks subject matter jurisdiction.

Because Section is the only proper jurisdictional basis for this action, this Court should dismiss all of the Plaintiffs' other jurisdictional claims. Similarly, Secretary Kerry is the only proper Defendant under that statute, and this Court should dismiss all claims against the other

---

[1]    If the Consulate or Embassy denies a certificate of identity, Plaintiffs may appeal that denial to the Secretary of State. *See* 8 U.S.C. § 1503(b). Should the certificate of identity be denied and should the Secretary of State affirm that denial, Plaintiffs would *then* have a claim for review of the Secretary's denial under the Administrative Procedure Act. *Hinojosa v. Horn*, No. B-16-10, ECF No. 19, slip op. at 10–11 (S.D. Tex. Sept. 9, 2016) (report and recommendation) (Defs.' Exhibit 1).

Defendants—in both their official and individual capacities. Moreover, because Plaintiffs have failed to allege sufficient, non-conclusory facts to show that they have valid claims under Section 1503 and its subsections, this Court should dismiss their Third Amended Complaint for failure to state a claim.

## STATUTORY BACKGROUND

Under the Nationality Act of 1940, an individual denied a right or privilege as a United States national could sue for declaratory judgment in federal court regardless of whether that person were within or without the United States. *See* Nationality Act of 1940, Pub. L. 76- 853, § 503, 54 Stat. 1137, 1171 (Oct. 14, 1940) (repealed 1952) (hereinafter, "Section 503"). If the individual were outside of the United States, the law provided for issuance of a certificate of identity to permit him to travel to the United States to litigate the lawsuit. *Id.*

By 1950, however, Congress was concerned that Section 503 was being abused, "and that it [had] been used in a considerable number of cases to gain entry into the United States where no such right existed." S. Rep. No. 81-1515, at 776–77 (1950) (Report of the Senate Judiciary Committee pursuant to S. Res 137, directing the Committee to make an investigation into the immigration system). To address this concern, the Senate Judiciary Committee recommended that the right to sue under Section 503 should be limited to persons "who are *in* the United States." *Id.* (emphasis added). In 1951, the Senate and House Judiciary Committees held joint hearings on various legislative proposals to overhaul the. immigration and nationality laws. While proposals varied, some bills proposed amending Section 503 to limit lawsuits to persons within the United States, as had been suggested by the Senate Judiciary Committee one year earlier. These proposals drew criticism from the Departments of State and Justice, as well as

3

various civic and professional organizations, such as the American Bar Association. *See* Joint Hearings before the Subcommittees of the Committees on the Judiciary on S. 716, H. R. 2379, and H. R. 2816, 82d Cong., 1st Sess., at 338, 443, 536, 710–22, 987 (1951).

All of these objections were concerned that proposals to limit Section 503 lawsuits only to persons within the United States would deny individuals outside the United States with meritorious claims to U.S. nationality the opportunity to obtain judicial review of their claims. *Id.* The Justice Department recommended adding language to these proposed revisions to Section 503 that would permit issuance of a certificate of identity or special visa to authorize a person to proceed to a United States port and apply there for entry as a U.S. national in the usual manner. *Id.* at 721. The Justice Department explained how, under its proposal, the individual would go through the usual screening, interrogation, and investigation applicable in cases of persons seeking admission to the United States, so that the now-defunct Immigration and Naturalization Service ("INS") would have as complete a record as possible on each person claiming to be a national, and if denied entry, the individual would then have review of that denial through habeas corpus in the manner that had existed for decades before. *Id.*[2]

---

[2]  *Compare Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922) (Brandeis, J.) (holding that resident in the United States and who claimed to be a citizen is entitled to a judicial determination of his citizenship and may not be deported by executive order, but that someone *outside* of the United States, seeking entry as a citizen, is not constitutionally entitled to a judicial determination of that question), *with United States v. Ju Toy*, 198 U.S. 253, 263 (1905) (Holmes, J.) (holding that a habeas petitioner from outside of the United States, and who had won at trial that he was a native-born citizen, could still not challenge the correctness of his administrative exclusion, even assuming "that the Fifth Amendment applies to him and that to deny entrance to a citizen is to deprive him of liberty, we nevertheless are of opinion that with regard to him due process of law does not require a judicial trial").

Subsequently, as the House and Senate worked toward enactment of what would become the INA, the two chambers took somewhat different approaches to the reform of Section 503. The House would have continued to allow persons outside the United States to sue for declaratory judgment, but would have limited the availability of a certificate of identity to travel to the United States to a person "who sometime prior to his application for the certificate of identity [had] been physically present in the United States, or to a person who [had been] born abroad of an American citizen parent and [was] seeking to come to the United States in order to fulfill residential requirements for retention of United States citizenship." H.R. 5678, 82d Cong. § 360(b) (1952). *See also* H. Rep. No. 82-1365, at 87–88 (1952). The bill also made clear that the purpose of the certificate of identity was to permit its holder to apply for entry to the United States "for the purpose of prosecuting his action for a determination of his nationality status[.]" H.R. 5678 § 360(c).

In contrast, the Senate bill limited the right to sue for declaratory judgment to persons within the United States. S. 2550, 82d Cong. § 360(a) (1952). For those outside the United States, the Senate bill adopted the approach recommended by the Justice Department during the 1951 Joint Hearings. The bill provided that a person outside the United States could apply to a U.S. diplomatic or consular officer for a certificate of identity, which would not permit the holder to enter the United States to prosecute his lawsuit, but rather to apply for admission to the United States at any port-of-entry, "subject to all the provisions of this Act relating to the conduct of proceedings involving aliens seeking admission to the United States." *Id.* at § 360(c). The Senate bill went on to say "[a] final determination by the Attorney General that any such

5

person is not entitled to admission to the United States shall be subject to review by any court of competent jurisdiction in habeas corpus proceedings *and not otherwise*." *Id* (emphasis added).

In reporting S. 2550 to the full Senate, the Senate Judiciary Committee explained that "[t]he bill modifies section 503 of the Nationality Act of 1940 by *limiting the court action exclusively to persons who are within the United States*[.]" S. Rep. No. 82-1137, at 50 (1952) (emphasis added). The Committee went on to explain that the bill

> further provides that any person who has previously been physically present in the United States but who is not within the United States who claims a right or privilege as a national of the United States and is denied such right or privilege by any government agency may be issued a certificate of identity for the purpose of traveling to the United States and applying for admission the United States. The net effect of this provision is to require that the determination of the nationality of such persons shall be made in accordance with the normal immigration procedures. These procedures include review by habeas corpus proceedings where the issue of the nationality status of the person can be properly adjudicated.

*Id.*

Thus, under the Senate's approach, persons outside the United States would no longer be able to sue for declaratory judgment, but rather would have to seek a certificate of identity, apply to enter the United States at a port of entry, and if denied, seek review via a petition for a writ of habeas corpus. And this interpretation was shared by opponents of the bill—as Senator Morse of Oregon observed how, under S. 2550, a person outside the United States claiming to be a citizen "can get a certificate to return, but not to return to prosecute a suit. He can return here only as an alien might come. He must sit in detention on Ellis Island while the Attorney General passes on his claim to citizenship and then if the Attorney General denies his claim, he can bring habeas corpus." Cong. Rec. S.5785 (May 22, 1952).

6

After the enactment of the INA, Section 1503 was substantially unchanged from S. 2550.[3] Consequently, the legislative history of Section 1503 demonstrates Congress' clear intent to eliminate jurisdiction over suits for declaratory judgment in cases concerning the denial of a right or privilege of a U.S. national by persons outside the United States. And this background was all well understood by courts across the country soon after the INA was enacted[4]:

> There is absolutely nothing in the [statute] from which it can be reasonably inferred that a person who is not within the United States, and who claims a right or privilege as a national of the United States, may institute a proceeding in the federal courts for a declaratory judgment with respect to the right claimed, or for the review of action by administrative agencies with respect to such right claimed, except as such question arises in a habeas corpus proceeding in the circumstances stated in the statute.

*D'Argento v. Dulles*, 113 F. Supp. 933, 935, 936 (D.D.C. 1953).

Nevertheless, despite Section 1503's plain language and extensive legislative history, some courts have said that persons not "within the United States" may still bring suit under Section 1503(a). *See Parham v. Clinton*, 374 Fed. App'x 503, 505 n.2 (5th Cir. 2010) ("[T]he Supreme Court has interpreted § 1503(a) to allow declaratory relief for plaintiffs outside the United States." (citing *Rusk v. Cort*, 369 U.S. 367, 379 (1962))); *Kahane v. Sec'y of State*, 700 F. Supp. 1162, 1165 n.3 (D.D.C. 1988) ("Persons outside the United States may sue under

---

[3]   In conference, Congress added language to subsection (b) to permit the use of certificates of identity by "a person under sixteen years of age who was born abroad of a United States citizen parent," as well as by those who, at some time prior to the application for a certificate of identity, had been physically present in the United States. Pub. L. 82-414, § 360(b), 66 Stat. 273 (Jun. 27, 1952).

[4]   *See, e.g.*, *Harake v. Dulles*, 158 F. Supp. 413, 416 (E.D. Mich. 1958); *Strupp v. Dulles*, 163 F. Supp. 790, 793 (S.D.N.Y. 1957); *Nevarez v. Brownell*, 218 F.2d 575, 577–78 (5th Cir. 1955); *Ficano v. Dulles*, 151 F. Supp. 650, 652 (E.D.N.Y. 1954); *Correia v. Dulles*, 129 F. Supp. 533, 534 (D.R.I. 1954); *Yamamoto v. Dulles*, 16 F.R.D. 195, 198 (D. Haw. 1954); *Avina v. Brownell*, 112 F. Supp. 15, 17–19 (S.D. Tex. 1953).

7

§ 1503(a) to establish United States citizenship." (citing *Cort*)); *Icaza v. Shultz*, 656 F. Supp. 819, 822 n.5 (D.D.C. 1987) ("Although § 1503(a) refers to a person 'within the United States,' the Supreme Court has extended the benefit of the § 1503(a) declaratory judgment procedure to persons outside the United States as well." (citing *Cort*)). After careful review of the statute and its legislative history, it appears these cases are mistaken, and offer no sufficient justification for ignoring the plain language and legislative intent of Section 1503 beyond citing to a misinterpretation of the Supreme Court's opinion in *Cort*.

Careful examination of *Cort* reveals the Supreme Court did not, in fact, hold that persons outside the United States may sue under Section 1503(a) without residing in the United States. Instead, the question presented in *Cort* was "whether, despite the liberal provisions of the Administrative Procedure Act, Congress intended that *a native of this country*, living abroad must travel thousands of miles *to be arrested*,[5] and go to jail in order to attack an administrative finding that he is not a citizen of the United States." *Cort*, 369 U.S. at 375 (emphases added). After analyzing the legislative history of the INA, the Supreme Court stated it was "satisfied that Congress did not intend to foreclose lawsuits by claimants, *such as Cort*, who do not try to gain entry to the United States *before* prevailing in their claims to citizenship." *Id*. at 379 (former emphasis added). The Court then held that "a person outside the United States who has been denied a right of citizenship is not confined to the procedures prescribed by [Section 1503(b) and (c)], and that *the remedy pursued in the present case* was an appropriate one." *Cort*, 369 U.S. at

---

5       Dr. Cort had already been indicted in 1954 in the District of Massachusetts for failing to report for induction into the armed forces as ordered. *See Cort*, 369 U.S. at 369 ("In 1954 an indictment charging him with draft evasion was returned in the United States District Court for the District of Massachusetts.").

379 (emphasis added). The "remedy pursued" in *Cort* was declaratory judgment and injunctive relief pursuant to the Declaratory Judgment Act and the Administrative Procedure Act. *Id*. at 369–72. Given the extreme facts involved, the Supreme Court allowed Dr. Cort to proceed under the APA, notwithstanding the provision making the APA available only if there is no other adequate remedy in a court (in that case, the impractical logistics of Dr. Cort having to return to the United States from Czechoslovakia and face indictment). 5 U.S.C. § 704. With the extremely sparse facts included about all but two of the Plaintiffs in their Third Amended Complaint, the Plaintiffs' repeated attempt to wedge their case into the narrow result of *Cort* must fail.

**FACTS AND COURSE OF PROCEEDINGS**

The Plaintiffs allege that they are United States citizens with addresses in Israel, except Plaintiff Manning who lives in Canada. *See* 3d Am. Compl. at ¶¶ 33–45. The Plaintiffs allege that their minor children born abroad are entitled to United States citizenship, with the exception of Plaintiff Kenton Neil Manning who advances a citizenship claim on his own behalf. *Id*. at ¶¶ 1, 31–47.

### A.  Plaintiff Kenton Neil Manning

Manning is a citizen of Canada who alleges an unarticulated right to United States citizenship. *Id*. at ¶¶ 21, 45–46. Manning purportedly received a final decision from the Department on May 24, 2007, denying his claim for a passport based on his lack of citizenship under 8 U.S.C. § 1401(c). *Id*. at ¶ 46. *Nothing* else is alleged regarding Mr. Manning, his claims of how or why he is entitled to United States citizenships, or his circumstances.

### B.  The Sitzman Plaintiffs

The Sitzman Plaintiffs obtained CRBAs from the United States Consulate in Jerusalem, but the State Department subsequently cancelled these CRBAs because the Sitzmans' U.S. citizen mother ("Mrs. Sitzman") failed to establish the required residence under 8 U.S.C. § 1401(c) before the Sitzman Plaintiffs were born in Israel. *Id*. at ¶ 51. After the State Department cancelled the Sitzmans' CRBAs, the Sitzman family challenged the decision by requesting a hearing, which was conducted by a hearing officer on May 11, 2011. *See* ECF No. 28-1 at 1. During the hearing, the Sitzman family submitted uncontested evidence that Mrs. Sitzman was in the United States from July 31, 1974 until September 11, 1974; from April 4, 1982 until May 3, 1982; and for approximately ten days in February 1990. *Id*. During her visits to the United States, Mrs. Sitzman stayed with relatives, where she participated in family activities and chores, but did not contribute to household finances. *Id*. Although she always intended to return to Israel, she had her mail stopped in Israel during her six-week stay in the United States in 1974. *Id*.

Based on Mrs. Sitzman's three visits to the United States, the hearing officer determined that she met the residence requirement under 8 U.S.C. § 1401(c). *Id*. at 5. The hearing officer drew the distinction between residence and domicile, noting that the latter common law concept involves an intent requirement. *Id*. at 4. Because the statute defines residence as the person's principal actual dwelling place without regard to intent, the hearing officer reasoned that a person's residence or abode in the United States can be any place where she stays during her visit to the United States. *Id*. The hearing officer also opined that some consular missions determined that residency is satisfied if the person was physically present in the United States.

*Id.* As such, the hearing officer concluded that it would be unfair to apply a purportedly new interpretation of the residence requirement as a basis for cancelling an already approved CRBA, and recommended that the Deputy Assistant Secretary restore the Sitzmans' CRBAs. *Id.*

After reviewing the record, the Deputy Assistant Secretary rejected the hearing officer's recommendation and upheld the Department's cancellation of the Sitzman Plaintiffs' CRBAs. *See* 3d Am. Compl. at ¶ 51; ECF No. 28-2. The Deputy Assistant Secretary reviewed the undisputed facts relating to Mrs. Sitzman's time in the United States, and concluded that her three visits to the United States did not qualify as a "residence" under 8 U.S.C. § 1401(c) and 8 U.S.C. § 1101(a)(33). ECF No. 28-2 at 1. The Deputy Assistant Secretary acknowledged that the Consulate originally approved the CRBAs, but the original approval was based on an erroneous interpretation of the term "residence" under the statute. *Id.* The fundamental error in the Consulate's original approval and the hearing officer's analysis was to conflate the concepts of residence and physical presence. *Id.*

Looking to the statutory language of 8 U.S.C. § 1401(c), the Deputy Assistant Secretary noted that Congress did not use the concept of "physical presence," as it had done in other sections of the INA, but chose to mandate that at least one of the person's United States citizen parents demonstrate a "residence" in the United States for purposes of establishing the citizenship of the child born overseas. *Id.* at 2. The Deputy Assistant Secretary reasoned that the residence requirement must be more demanding than mere physical presence because Congress defined "residence" as the person's abode or "principal actual dwelling place in fact, without regard to intent," which "takes into account the nature and quality of the person's connection to the place." *Id.* Because temporary "physical presence" in the United States is not enough to

11

establish residency, the Deputy Assistant Secretary concluded that residence cannot be determined solely by the length of time spent in a place and must depend on "much more than an address or a place one visits on vacation." *Id*. Moreover, Congress specifically stripped the definition of residence of an intent requirement, which led the Deputy Assistant Secretary to conclude that "[r]esidence is not a state of mind but a state of affairs to be demonstrated by objective facts" that "requires a close examination, on a case-by-case basis, of the facts related to one's stay in the United States[.]" *Id*.

Bearing in mind the statutory distinction between "residence" and "physical presence," the Deputy Assistant Attorney General determined that Mrs. Sitzman never had a residence in the United States before the birth of her children in Israel. *Id*. The undisputed facts showed that Mrs. Sitzman visited the United States three times before the birth of her children in Israel, but these visits were vacations to see family and attend family events. *Id*. Mrs. Sitzman's sojourns to the United States constituted physical presence, but the Deputy Assistant Attorney General determined that the visits did not establish that Mrs. Sitzman had a "principal, actual dwelling place" in the United States for purposes of meeting the statutory definition of residence. *Id*. Thus, the Deputy Assistant Secretary rejected the hearing officer's recommendation and affirmed the Department's cancellation of the CRBAs. *Id*. at 3.

### C. The Other Plaintiffs in Israel

Apart from Mr. Manning and the Sitzman Plaintiffs, all of the Plaintiff parents in Israel submitted applications for passports or CRBAs on behalf of their minor children, and the United States Consulate in Jerusalem denied the applications[6] because in each application the United

---

[6]  Defendants reiterate that the Meiselman family's daughter, E.M., was issued a U.S.

12

States citizen parent failed to provide sufficient evidence to show, by a preponderance of evidence, that he or she met the residence requirement under 8 U.S.C. § 1401(c). *Id*. ¶¶ 2–21, 31, 36–46. For example, only the Chacoty, Spector, and Nachshon families make *any* factual allegations regarding their CRBA or passport applications. *Id*. at ¶¶ 44, 49–50; ECF No. 28-4. These were described as "example[s]," 3d Am. Compl. at ¶ 49, but do not even attempt to claim that any of the Chacoty, Spector, or Nachshon parents ever spent any period of time within the United States. In fact, the only other allegations that Plaintiff families make are the conclusory assertions that the State Department's decisions for each family's application was wrongly decided.

### D.  The Plaintiffs' Civil Action

On May 2, 2014, Plaintiffs filed a complaint with this Court challenging the Department's various decisions relating to Plaintiffs' applications for CRBAs or passports.  ECF No. 1. Plaintiffs filed amended complaints and, after the May 12 hearing before this Court, Plaintiffs filed their third amended complaint on July 15, 2016. *See* ECF No. 28.

Again, Plaintiffs allege that the State Department's various decisions denying their applications for CRBAs or passports, and for cancelling the Sitzmans' CRBAs, were based on an incorrect interpretation of "residence" and were, therefore, arbitrary and capricious and a violation of due process. *See id*. at ¶¶ 68–98. Plaintiffs therefore seek an order compelling the State Department to issue CRBAs or passports to all Plaintiffs. *Id*. at 32–33.

---

Passport on February 10, 2015. Because a valid passport issued by the Secretary of State "shall have the … force and effect as proof of United States citizenship," 22 U.S.C. § 2705, the Meiselman family's claims are now moot and therefore must be dismissed. *See Dulles v. Nathan*, 225 F.2d 29, 31 (D.C. Cir. 1955).

**ARGUMENT**

In a nutshell, there are two systemic problems that, much like Plaintiffs' prior complaints, run throughout Plaintiffs' Third Amended Complaint: (1) insufficient facts and (2) insufficient facts to provide this Court with jurisdiction under Section 1503 (or, for that matter, the APA).

First, the Third Amended Complaint includes the claims of twenty-seven persons (including the mooted-out claims of the Meiselman parents, but not including the children on whose behalf the parent Plaintiffs are acting), each of which presumably has spent some amount of time within the United States. Yet the only facts we have been given regarding *any* of these presumed past visits to the United States relate to the Sitzman Plaintiffs. This is inadequate to state a plausible claim for the relief that Plaintiffs seek. *Ashcroft v. Iqbal*, 556 US 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (quotations omitted)). Unless all of the other Plaintiffs' claims for relief are founded on the facts regarding the Sitzman Plaintiffs (which is highly unlikely), their current attempt at joinder is improper because they arise out of different transactions, occurrences, or series of transactions or occurrences. *See* Fed. R. Civ. P. 20(a)(1)(A)–(B). At the end of the day, each Plaintiff must prove that a relevant U.S. citizen parent has had a past residence in the United States. After *Iqbal*, this means they must provide facts that relate to their *own* claims for relief.

Second, these factual inadequacies create fundamental questions about this Court's jurisdiction. "Jurisdiction is, of necessity, [normally] the first issue for an Article III court." *DSMC, Inc. v. Convera Corp.*, 349 F.3d 679, 682 (D.C. Cir. 2003) (quotation omitted). In this case, Plaintiffs have failed to allege any facts that would establish that they are eligible to seek

relief under Section 1503. Without any facts about whether any of the Plaintiffs have satisfied

Section 1503(a)'s jurisdictional clauses, this Court must not presume it has obtained jurisdiction.

As the language of Section 1503(a) makes clear, declaratory judgment actions may be

brought under this section only by a "person who is within the United States," and who "resides

or claims a residence" in the District in which he brings suit. 8 U.S.C. § 1503(a). Again, this

requirement is significant enough that Congress provided an entirely separate procedure for

persons who are not "within the United States." 28 U.S.C. § 1503(b) & (c). None of the

Plaintiffs—not even the Sitzman Plaintiffs—have alleged that they are, or were when they

commenced this action, within the United States. Nor do any of them allege a residence in this

District, or indeed, within the United States at all. This is a problem because that statute is

jurisdictional. *Villarreal v. Horn*, No. 15-cv-111, ECF No. 99, slip op. at 10 (S.D. Tex. Sept. 13,

2016) (Defs.' Exhibit 2) ("After considering § 1503(a)'s text and structure, its legislative history,

and its purpose as expounded in *Cort*, the Court concludes that Congress clearly intended to

express a jurisdictional limitation by including the 'resides or claims a residence' language.");

*Villarreal v. Horn*, — F. Supp. 3d —, 2016 WL 4094708, at *8 (S.D. Tex. July 29, 2016)

("Villarreal concedes that she cannot bring a claim under § 1503(a) because she 'is [not] within

the United States' as that phrase is used in § 1503(a). The Court therefore dismisses A.

Villarreal's § 1503(a) claim."). Accordingly, the Plaintiffs have failed to state an adequate claim

to provide this Court with jurisdiction under Section 1503(a).

Plaintiffs have also failed to establish that they meet the requirements of Section 1503(b)

and (c). Under those provisions, a person not within the United States may apply to a U.S.

diplomatic or consular officer in the foreign country for a certificate of identity for the purpose

15

of traveling to a port of entry in the United States and applying for admission. 8 U.S.C. §
1503(b). Upon receiving the certificate of identity, the person may apply for admission to the
United States from the Department of Homeland Security, and any denial of admission is
reviewable by a court of competent jurisdiction in habeas corpus proceedings, "and not
otherwise." 8 U.S.C. § 1503(c). Here again, however, the Third Amended Complaint is devoid of
any allegation that any Plaintiff has complied with, or even attempted to make use of, this
prescribed procedure. This is just as jurisdictionally deficient as the factual inadequacies
described above regarding subsection (a). *See Hinojosa*, slip op. at 14–15 ("This does not mean
that Hinojosa is left without a vehicle through which to pursue her citizenship claim. She may
still follow the procedures set forth in § 1503(b) and § 1503(c). What she cannot do, given that
she is not present in the United States, is pursue relief under § 1503(a). Accordingly, this claim
should be dismissed."). The Plaintiffs have thus failed to state a claim on which relief can be
granted under Section 1503(b) and (c), as well.

I.      **Without Sufficient Facts, The Plaintiffs' Complaint Must Be Dismissed Under
        Rule 12(b)(6).**

Despite their many past complaints filed in this case, Plaintiffs have *still* failed to present
a plausible claim for relief because they have simply not included sufficient factual material,
under any of the assortment of legal theories they asset, for the purposes of Rule 12(b)(6). When
considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-
pleaded facts and allegations in the complaint. *Iqbal*, 556 U.S. at 678. The Court need not,
however, accept a plaintiff's legal conclusions. *Id*. "Threadbare recitals of the elements of a
cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Only a complaint that states a plausible claim for

16

relief should survive a motion to dismiss. *Id*. at 1950 (citing *Twombly*, 550 U.S. at 556). The facts alleged therefore must allow the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged by each plaintiff. *See Rollins v. Wackenhut Services, Inc*., 703 F.3d 122, 129–30 (D.C. Cir. 2012). In ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice. *See Hassan v. Holder*, 793 F. Supp. 2d 440, 445 (D.D.C. 2011).

As previously discussed, with the exception of the Sitzmans, Plaintiffs fail to allege *any* particularized facts relating to their parents' time in the United States or whether they (or one of their parents) had a residence in the United States before the birth of their children outside the United States. Plaintiff Manning, for example, alleges only that he received a final decision from the State Department on May  24, 2007, denying his claim for citizenship under 8 U.S.C. § 1401(c). *Id*. ¶ at 46. He provides no factual allegations regarding the basis for his alleged right to United States citizenship. *See* 3d Am. Compl. at ¶¶ 21, 45–46. Similarly, the only factual allegations that any of the Plaintiffs (other than the Sitzmans) make regarding their activities in the United States relate to the defects that the Department found in two applications for CRBAs, not the basis for their claim of citizenship.  *See, e.g.*, *id*. at ¶ 45–46 (the Chacoty family alleges that the State Department denied their applications on behalf of their children because they did not provide evidence showing that "the United States was ever the place of general abode" and the Spector family alleges that the Department denied Mr. Spector's application because he failed to show that he had a "'residence' in the United States prior to the child's birth"); ECF No. 28-4 (a denial letter for the Nachshon family's CRBA application for their son). None of these

factual allegations are sufficient to make out a plausible claim for relief under any of the legal theories asserted by Plaintiffs.

The statute that Plaintiffs want this Court to interpret provides that a person born abroad to United States citizen parents must show that at least one parent "has had a residence in the United States or one of its outlying possessions, prior to the birth of such person" to establish United States citizenship. 8 U.S.C. § 1401(c). Congress defined the term "residence" as "the place of general abode," which means a person's "principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(a)(33). Because the statute distinguishes between physical presence and residence, *see* 8 U.S.C. §§ 1401(c), (g), the Department has determined, consistent with longstanding Department policy, that a person's residence in the United States is not established solely by the length of time a person spends in a place, but necessarily implicates "the nature and quality of the person's connection to the place," which requires consular officers to apply a "fact-specific test" to the circumstances in each application for a CRBA. *See* Dep't of State Cable, 12 State 3735, ¶ 2.

Plaintiffs challenge the Department's interpretation as inconsistent with the statutory definition of residence, but fail to allege any facts that arguably demonstrate they had a residence in the United States before the birth of their children overseas. Even under their own tendentious reading of the statutory definition, which Defendants dispute, Plaintiffs fail to marshal sufficient facts to show that they fall within the definition of residence. *See United Steel, Paper and Forestry, Rubber, Manufacturing v. PBGC*, 707 F.3d 319, 324 (D.C. Cir. 2013) (even when the statutory definition is not in dispute, the court must determine whether the facts fit within a statutory definition). Without alleging *any* facts by which the Court can determine whether

18

specific Plaintiffs fall within any alleged statutory definition of residence, they cannot state a plausible claim for relief based on Defendants' allegedly incorrect interpretation. *Rollins*, 703 F.3d at 129–30.  Thus, the claims of the Plaintiffs (other than the Sitzmans') must be dismissed for failure to allege sufficient facts, either to assert a claim of nationality under Section 1503 or to challenge the  denial of their passport or CRBA applications under the APA.

## II.     There Are Inadequate Facts To Provide The Court With Jurisdiction Under Section 1503.

It is well-established that "'the party invoking federal jurisdiction bears the burden of establishing its existence.'" *U.S. Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2003) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998)). Thus, in examining a motion filed pursuant to Rule 12(b)(1), the Court may consider matters outside the pleadings and should dismiss a complaint when it is shown beyond a doubt that the plaintiff can prove no set of facts that establish jurisdiction. Plaintiffs have failed to meet their burden of demonstrating that the Court possesses jurisdiction to entertain this suit under Section 1503.

For jurisdiction to be properly found under Section 1503, Plaintiffs must similarly allege at least some facts to indicate through which subsection of Section 1503 they are pursuing their claims. Specifically, whether Plaintiffs are "within the United States" for the purposes of subsection (a) or, instead, have followed the process laid out in subsections (b) and (c). *Cf. Bensky v. Powell*, 391 F.3d 894, 897 (7th Cir. 2004) (Posner, J.) ("[Plaintiff]'s complaint alleged that he also 'claims residence in Madison, Wisconsin,' where his brother, who represents him in this matter, practices law. So we infer, in the absence of any denial by the government, that Bensky was in Madison when the suit was filed. We can proceed, then, to the merits."). Plaintiffs' Third Amended Complaint has not corrected this deficiency.

19

**A.  The Absence of Jurisdictional Facts Deprives the Court of Jurisdiction**

In their Third Amended Complaint, none of the Plaintiffs has satisfied the burden of Section 1503(a)'s residence clause (that, is whether and where he or she is "within the United States") for purposes of jurisdiction. Although they list their addresses in either Israel or Canada, it is entirely unclear where any of the Plaintiffs actually reside—either now or at the time they filed the instant action. There is an equal absence of facts regarding whether any of the Plaintiffs have even attempted to follow the process laid out in Section 1503's subsections (b) and (c). Consequently, Plaintiffs have not satisfied any of the jurisdictional requirements of Section 1503.

These omissions are significant because the requirements in Section 1503's subsections (either through (a) that plaintiffs be "within the United States and "claim[s] a residence" there, or the alternative conditions precedent laid out in subsections (b) and (c)) are jurisdictional in nature.[7] *See Villareal*, slip op. at 10; *Hinojosa*, slip op. at 11–15; *see also Okere v. United States of Am. Am. Citizens Servs.*, 2015 WL 3504536, at *3 (N.D. Ill. June 2, 2015); *Bensky*, 391 F.3d at 896 (Section 1503(a) "is inapplicable to someone who is not in the United States when he

---

[7]   *See, e.g.*, *Boggiano v. Att'y Gen. of U.S.*, 429 Fed. App'x 162, 164 (3d Cir. 2011) (dismissing for lack of jurisdiction a petition for review of USCIS order that denied petitioner a "right or privilege" of citizenship, because § 1503(a) requires that such actions originate in the district court); *Almonte v. Holder*, 380 Fed. App'x 351, 352 (4th Cir. 2010) (per curiam) (unpublished) (construing petitioner's motion to verify legal status as U.S. national as being filed under § 1503(a), and affirming district court's denial of motion because petitioner filed motion in the wrong district court "as jurisdiction is vested in the court in the district in which he resides"); *Reaume v. United States*, 124 F. Supp. 851, 853-54 (E.D. Mich. 1954) (concluding that, where "a permanent resident of this District claims to be a national" and that claim is denied by the government, "this court has jurisdiction of an action" under § 1503(a)); *Barreiro v. McGrath*, 108 F. Supp. 685, 688 (N.D. Cal. 1952) (framing issue of where § 1503(a) suit should have been brought as "jurisdictional" and, because plaintiff claimed permanent residence in the Northern District, the case was "therefore within the jurisdiction of this court").

20

sues"); *Said v. Eddy*, 87 F. Supp. 2d 937, 940 (D. Alaska 2000). And this statutory reading is not surprising given the Supreme Court's recent case law explaining how a court's "jurisdictional analysis must focus on the 'legal character' of the [statute's] requirement, which we discern[] by looking to the condition's text, context, and relevant historical treatment[.]" *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010) (citations omitted). Given the statute's language, structure, and history, "Congress clearly intended to express a jurisdictional limitation" by enacting Section 1503. *Villareal*, slip op. at 10.

Turning to the plain language, when confronted with language similar to Section 1503(a)'s "within the United States" and residence clause, the D.C. Circuit's recent decision in *Shelby County, Ala. v. Lynch*, 799 F.3d 1173 (D.C. Cir. 2015) is instructive. That case concerned a venue provision of the Voting Right Acts ("VRA"), 52 U.S.C. § 10310(b), which the D.C. Circuit interpreted to be jurisdictional in nature. Specifically, the VRA provides that:

> No court other than the District Court for the District of Columbia shall have *jurisdiction* to issue any declaratory judgment ... or any restraining order or temporary or permanent injunction against the execution or enforcement of any provision[.]

(emphasis added). Based on the clear usage of "jurisdiction," the *Shelby County* court held that § 10310(b) was jurisdictional in nature, reasoning that it "simply limits jurisdiction over constitutional challenges to the VRA to the District Court for the District of Columbia." *Shelby Cnty.*, 799 F.3d at 1182–84. Here, Section 1503's similar language should compel recognizing Section 1503's express language as equally jurisdictional.

It is important to note Section 1503's structure, in that it independently confers subject matter jurisdiction without resort to 28 U.S.C. § 1331 for federal question jurisdiction. *See Acosta v. United States*, 2014 WL 2216105, *2 (W.D. Wash. May 29, 2014) ("Title 8 U.S.C. §

1503(a) confers subject matter jurisdiction on district courts."); *Henry v. Quarantillo*, 684 F. Supp. 2d 298, 302 (E.D.N.Y. 2010) (same). Thus, while courts are naturally reluctant to interpret certain language as jurisdictional when jurisdiction has arguably been conferred by another statute,[8] this concern is of no import here. Where, as here, specific language in Section 1503(a) has jurisdictional language that governs *both* jurisdiction and venue, it is fair to read both clauses as jurisdictional. *See Villareal*, slip op. at 10–12; *cf. Reed Elsevier*, 559 U.S. at 166 (statutory registration requirement was not jurisdictional, as it "is not clearly labeled jurisdictional, is not located in a jurisdiction-granting provision, and admits of congressionally authorized exceptions"); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006) (employee-numerosity requirement was *not* jurisdictional where it "appears in a separate provision that 'does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts'") (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)).

Finally, Section 1503's historical context further supports reading the statute as jurisdictional. Bear in mind that in 1952 Congress enacted the current version of Section 1503(a) to "limit[] the court action exclusively to persons who are within the United States" as a means to combat significant abuses of Section 503 of the Nationality Act of 1940 where it had "been used in a considerable number of cases to gain entry into the United States where no such right existed." S. Rep. No. 82-1137, at 50 (1952); S. Rep. No. 81-1515, at 776–77 (1950). The abuses of Section 503 led to an increase in the volume of fraudulent entries into the United States,

---

8    *See, e.g.*, *Reed Elsevier*, 559 U.S. at 164–65 (reasoning that registration requirement was located in a provision separate from those granting subject matter jurisdiction—that is, 28 U.S.C. §§ 1331 and 1338—and neither statute conditions jurisdiction on whether copyright holders have registered their works before filing suit).

difficulties experienced by courts in adjudicating derivative citizenship claims without the claimants having been subject to initial immigration screening, and the cluttering of federal court dockets. *See Villareal*, slip op. at 3–9; *see also Cort*, 369 U.S. at 390–91 (Harlan, J., dissenting).

Congress, in enacting Section 1503, meant to draw a very clear line between residents and nonresidents, those within the United States and those abroad, and the remedies afforded to each. *See Avina*, 112 F. Supp. at 17–18 (summarizing differences between Sections 503 and 1503, and explaining Congress' intent behind changes). It is also evident that Congress intended to *confer jurisdiction* under Section 1503(a) only on those district courts for the district in which a claimant resides or claims a residence. 8 U.S.C. § 1503(a). To hold otherwise would render the residence requirement ineffective. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (noting how it is "a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant" (internal quotations omitted)). Put another way

> [i]f persons who are not physically and legally present in the United States are permitted to pursue their claims under Section 1503(a), then the word "not" in § 1503(b) is superfluous. If anyone who is claiming to be a citizen—no matter where they are currently living—can simply sue the Government under § 1503(a), then the phrase "not within the United States" in § 1503(b) is of no effect. The only logical way to read this statute and to give effect to all of its words is to conclude that Congress intended two different procedures; one that applies to individuals physically present in the United States and a different procedure for those individuals who are not physically present in the United States.

*Hinojosa*, slip op. at 12.

Apart from addresses listed outside of the United States, there are no facts in the Third Amended Complaint to indicate whether (1) Plaintiffs are or were "within the United States"; (2) where any of them specifically reside (be that within or without the United States); or (3) if they

reside outside of the United States, whether any of them have attempted to go through the alternative process laid out in Section 1503(b) and (c). Without any of this information, Plaintiffs have not yet met their burden of establishing this Court's jurisdiction (or as an appropriate venue) under Section 1503 for the purposes of Federal Rule of Civil Procedure 12. And given the statute's language, structure, and history, the Court should not allow the Third Amended Complaint to proceed *Cf. Herbert v. Holder*, 2010 WL 5125318 at *1 n.1 (D.D.C. 2010).

### III.    Plaintiffs' Other Bases For Jurisdiction Are Unfounded.

As a basis for their Amended Complaint, Plaintiffs assert jurisdiction under the federal question statute, the Mandamus Act, the APA, the Declaratory Judgment Act, and "8 U.S.C. Sec. 1503." 3d Am. Compl. at ¶¶ 26–28. Nevertheless, this Court lacks jurisdiction under these other statutes because, unlike Section 1503, they are not (other than the federal question statute) independent grants of jurisdiction. Moreover, only Section 1503 provides for a specific source of federal jurisdiction to obtain a declaration of United States citizenship. And because Plaintiffs' Amended Complaint still provides no facts to show how they have no other adequate remedy available, Section 1503's specified processes are the only ones Plaintiffs must follow for their Third Amended Complaint to be well-pleaded. As Judge Posner put it, Section 1503 is "not just one route that [plaintiffs] c[an] take[] to obtain relief … it [i]s the only route." *Bensky*, 391 F.3d at 895; *see also Hinojosa*, slip op. at 7–10.

### A.    The Mandamus Act

Plaintiffs assert a claim under the Mandamus Act, 28 U.S.C. § 1361. 3d Am. Compl. at ¶ 26. This statute gives district courts original jurisdiction over any action in the nature of mandamus to compel an agency to perform a nondiscretionary duty owed to a plaintiff. But this

remedy is available only if all other avenues of relief are exhausted. *See, e.g.*, *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). Indeed, the D.C. Circuit's decision in *Cartier* reversed the district court for reviewing administrative determinations of citizenship brought under the Mandamus Act. *See Cartier v. Sec'y of State*, 356 F. Supp. 460, (D.D.C. 1973), *remanded* 506 F.2d at 200 ("The motion by the Secretary of State to dismiss his appeal is granted, and the case is remanded to the District Court with instructions to dismiss appellee's petition without prejudice to the renewal of an action in the appropriate forum under the provisions of 8 U.S.C. § 1503."). Specifically, the D.C. Circuit held that mandamus was an inappropriate remedy for contesting agency determinations of nationality status because the remedies under 8 U.S.C. § 1503 are "more than adequate." *Id.* at 199 (mandamus is an "extraordinary remedy to be utilized only in the clearest and most compelling cases"). Plaintiffs' case here is no different and should therefore be treated in the same manner as *Cartier*.[9]

Moreover, while the State Department has a duty to adjudicate Plaintiffs' passport and CRBA applications, Plaintiffs admit that the Department has already denied their applications.[10] *See, e.g.*, 3d Am. Compl at ¶ 20; *see also* 22 U.S.C. § 211a. Plaintiffs cannot, and do not, argue that Defendants have a duty to approve their CRBA or passport applications. The State Department is not mandated to find that every applicant is a United States citizen or national, or to issue a passport to anyone in the world upon request. Rather, the determination of citizenship and or nationality are discretionary functions authorized to the Secretary of State under 22

---

[9]     *Cf.* Wilkes' Case (1770) *Rex v. Wilkes*, 98 Eng. Rep. 327, 335–36; 4 Burr. 2527, 2551 (Lord Mansfield) ("[W]e must act alike in all cases of like nature: and what we do now, ought to be agreeable to former precedents, and will become a precedent in future cases of a like kind.").

[10]    Again, however, Defendants deny this allegation for the Meiselman Plaintiffs, whose

U.S.C. § 211a *et seq.*, which provides that "[t]he Secretary of State *may* grant and issue passports." *Id.* (emphasis added); *see also Haig v. Agee*, 453 U.S. 280, 295 n.26 (1981) (noting that use of the word "may" expressly recognizes substantial discretion).

### B.     The APA

The Plaintiffs also seek review of the State Department's adverse citizenship determinations under the APA. 3d Am. Compl. at ¶¶ 26–27 (claiming that "[j]urisdiction under the APA is unassailable"). But the most relevant APA provision in this case is how judicial review under the APA is only available for "final agency action for which there is *no other adequate remedy in a court*." 5 U.S.C. § 704 (emphasis added); *see also Bowen v. Commonwealth of Massachusetts*, 487 U.S. 879, 903 (1988) (holding that the language of 5 U.S.C. § 704 "makes it clear that Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action"). Put another way, the APA will not apply if there are other satisfactory administrative or judicial remedies still available. *Cf., e.g., El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1273–74 (D.C. Cir. 2005) (examining whether the relief available under 42 U.S.C. § 233 was sufficient to preclude APA review of HHS actions and concluding that it was not). The question of final agency action looks to whether agencies might still provide relief. The question of whether other judicial remedies are "adequate" looks to whether there is another "statutory and regulatory scheme that specifically provides for judicial review," *Dresser v. Meba Med. & Benefits Plan*, 628 F.3d 705, 711 (5th Cir. 2010) (per curiam), to redress the injury

---

daughter was issued a passport on February 10, 2015.

alleged, although the alternative need not be "more effective" than APA review. *Council of &*
*for the Blind of Del. Cnty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1532–33 (D.C. Cir. 1983).

        *i.*    *Final Agency Action*

       Jurisdiction does not exist under the APA unless a plaintiff is challenging a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. If there is no final agency action, however, a federal court lacks subject matter jurisdiction. *See id.* As previously noted, Section 1503 specifically provides for judicial review. Specifically, if the Plaintiffs are not within the United States, they must go through the processes laid out in Section 1503 (b) and (c). That is, if those Plaintiffs outside of the United States receive a certificate of identity from the State Department, they can present themselves at a port of entry and seek admission to the United States under subsection (c) to pursue their claim for citizenship. If they are denied admission, their denial of entry can be judicially reviewed in a habeas proceeding. 8 U.S.C. § 1503(c). *See Hinojosa*, slip op. at 10–11 (distinguishing *Cort* and concluding that, because the plaintiff had not gone through Section 1503's processes, "the Court lacks jurisdiction to consider [her] APA claim and it should be dismissed without prejudice for lack of jurisdiction"); *Villarreal*, 2016 WL 4094708, at *6 (stating that an APA claim was foreclosed when relief is available under Section 1503).

       More importantly here, the State Department's denial of CRBAs does not constitute final agency action. In general, for agency action to be deemed final, it "must mark the consummation of the agency's decision-making process" and "must be [action] by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (quotations and citations omitted). In evaluating whether a challenged

agency action meets these two conditions, courts are guided by the Supreme Court's interpretation of the APA's finality requirement as "flexible" and "pragmatic." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149–50 (1967). If there are further administrative or statutory remedies available to a plaintiff, then the agency action is not final for APA purposes.

Here, the denials of the CRBAs are an intermediate step in a regulatory and statutory structure that culminates in the process outlined in Section 1503. *Cf. DRG Funding Corp. v. Sec'y of Housing and Urban Dev.*, 76 F.3d 1212, 1220 (D.C. Cir. 1996) (Ginsburg, J., concurring) ("Our analysis of the finality requirement imposed by the APA is properly informed by our analysis of that requirement in § 1291 .... 'To effectuate [their] common purpose, courts have permitted interlocutory appeals under both statutes only in exceptional cases, a requirement that partakes of similar meanings in both contexts.'"); *State of Alaska v. Federal Energy Regulatory Comm'n*, 980 F.2d 761, 763–64 (D.C. Cir. 1992). Simply put, intermediate agency action is not a final agency action if there other procedural remedies still available. *See DRG Funding*, 76 F.3d at 1215 (noting how the APA has no exception for interlocutory agency decisions); *State of Alaska*, 980 F.2d at 764 (same); *see also Xia v. Kerry*, 73 F. Supp. 3d 33, 45 (D.D.C. 2014) (Section 1503 requires exhaustion of administrative remedies prior to filing suit); *Roman-Salgado v. Holder*, 730 F. Supp. 2d 126, 131 (D.D.C. 2010).

Consequently, if the Plaintiffs who are not within the United States were to first apply for certificates of identity; have their applications denied; appeal to the Secretary of State and have the Secretary affirm that denial; they would then have a final agency decision. *Hinojosa*, slip op. at 10–11; *see also Bennett*, 520 U.S. at 178. In that hypothetical circumstance, they might have

28

an APA claim to pursue. Without any of these details in the Third Amended Complaint, however, it does not appear that those are the circumstances presented here.

### ii. Whether Section 1503 Provides Adequate Relief Under Cort

In a way, Plaintiffs' argument for jurisdiction under the APA has essentially the same deficiency as described above concerning the Plaintiffs' attempt to claim that jurisdiction is founded on the Mandamus Act. It is therefore not surprising that many other district courts have, in similar cases, followed this approach and dismissed such APA claims. *See, e.g.*, *Hinojosa*, slip op. at 10–11; *Cavazos v. Kerry*, 2016 WL 4126142, at *4 (N.D. Tex. Aug. 3, 2016); *Villarreal v. Horn*, — F. Supp. 3d —, 2016 WL 4094708, at *6 (S.D. Tex. July 29, 2016) (stating that an APA claim was foreclosed when relief is available under Section 1503).; *Xia*, 73 F. Supp. 3d at 46 ("[P]laintiff Xia has failed to demonstrate why Section 1503 of the INA is an insufficient remedy. Accordingly, this Court dismisses all plaintiffs' claims under the APA."); *Hassan*, 793 F. Supp. 2d at 446 (dismissing claims under the APA and the Mandamus Act because plaintiff had adequate relief under Section 1503, and dismissing plaintiff's claim under the Declaratory Judgment Act for lack of subject matter jurisdiction); *Raya v. Clinton*, 703 F. Supp. 2d 569, 576 (W.D. Va. 2010) (dismissing claims under the APA and Mandamus Act because plaintiff had adequate relief under 8 U.S.C. § 1503).

But Plaintiffs' reliance on the Supreme Court's decision in *Cort* for jurisdiction is inapt when that decision's jurisdictional analysis is acknowledged to be flawed after the Supreme Court's decision in *Califano v. Sanders*. 430 U.S. 99, 105–07 (1977). In *Cort*, the Supreme Court opined that the APA provided an independent basis for jurisdiction to consider the plaintiff's citizenship claim. *Cort*, 369 U.S. at 372; *see also id.* at 375 ("[T]he question in this case is

29

whether, despite the liberal provisions of the Administrative Procedure Act, Congress intended

that a native of this country living abroad must travel thousands of miles, be arrested, and go to

jail in order to attack an administrative finding that he is not a citizen of the United States. We

find nothing in the statutory language, in the legislative history, or in our prior decisions which

leads us to believe that Congress had any such purpose."). What Plaintiffs fail to take into

account is that the Supreme Court later expressly reversed its holding that the APA provided an

independent basis for jurisdiction. *Califano*, 430 U.S. at 105. Indeed, the *Califano* Court

specifically cited *Cort* as one of the cases abrogated by its ruling:

> Three decisions of this Court arguably have assumed, with little discussion, that
> the APA is an independent grant of subject-matter jurisdiction. *See Citizens to
> Preserve Overton Park v. Volpe*, 401 U. S. 402, 410, 91 S. Ct. 14, 820, 28 L. Ed.
> 2d 136 (1971); *Abbott Laboratories v. Gardner*, 387 U. S. 136, 141, 87 S. Ct.
> 1507, 1511, 18 L. Ed. 2d 681 (1967); *Rusk v. Cort*, 369 U. S. 367, 372, 82 S. Ct.
> 787, 790, 7 L. Ed. 2d 809 (1962). However, an Act of Congress enacted since our
> grant of certiorari in this case now persuades us that the better view is that the
> APA is not to be interpreted as an implied grant of subject-matter jurisdiction to
> review agency actions.

*Califano*, 430 U.S. at 105. Thus, the Plaintiffs' argument that APA jurisdiction for citizenship

claims is "unassailable" "is contrary to the law as it currently stands." *Hinojosa*, slip op. at 11.

Moreover, due to the extreme scarcity of facts about many of the Plaintiffs, there is

nothing in the Amended Complaint to suggest that the Plaintiffs either are admittedly United

States citizens (as Dr. Cort was acknowledged to be a native-born citizen), or in a similar

predicament as Dr. Cort—who was, at the time of his case before the Supreme Court, under

indictment for evading the "Doctor Draft." *See Cort*, 369 U.S. at 369. And Dr. Cort was

indisputably a citizen and who was challenging the process by which he was stripped of his

citizenship as unconstitutional. *See id.* Here, on the other hand, it appears that the Plaintiffs are

claiming statutorily derived citizenship based on a parent's past residence, but with inadequate proof. This is an important point, as it goes to why specific facts need to be pleaded, and why "quoting regulatory language and making conclusory statements that a law is violated, *without facts supporting that inference*, does not satisfy the pleading requirements. *Trazell v. Wilmers*, 975 F. Supp. 2d 133, 146 (D.D.C. 2013) (citing *Iqbal*, 556 U.S. at 678); *cf. also Pretka v. Kolter City Plaza II, Inc.*, 608 F. 3d 744, 753–54 (11th Cir. 2010) ("[W]ithout facts or specific allegations, the … controversy could be divined only by looking at the stars—only through speculation—and that is impermissible." (internal quotations omitted)). Indeed, all but the Sitzman Plaintiffs fail to plead even the barest of facts to indicate that they have a plausible argument that any of the parents met the residence requirements of 8 U.S.C. § 1401(c).

###        C.        The Declaratory Judgment Act

The Declaratory Judgment Act does not create an independent basis for district-court jurisdiction. *See* 28 U.S.C. §§ 2201, 2202. Rather, it provides a remedy when jurisdiction is otherwise established. *Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671–72 (1950) ("'[T]he operation of the Declaratory Judgment Act is procedural only.' Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction. When concerned as we are with the power of the inferior federal courts to entertain litigation within the restricted area to which the Constitution and Acts of Congress confine them, 'jurisdiction' means the kinds of issues which give right of entrance to federal courts. Jurisdiction in this sense was not altered by the Declaratory Judgment Act." (alteration in original) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937))). Plaintiffs seek a declaratory judgment and bring a claim under the Declaratory Judgment Act, *see* 3d Am. Compl. at ¶ 26, but this is improper

31

because Section 1503 provides a very similar form of relief. Indeed, the Plaintiffs may very well be entitled to a declaratory judgment should they be successful in their surviving causes of action. Nevertheless, the Plaintiffs cannot bring a claim under the Declaratory Judgment Act as a separate and independent cause of action, which is what they are attempting to do in their Amended Complaint.

Although it could be argued that Section 1503 only provides for a cause of action, rather than for both the cause of action along with jurisdiction, that position is contrary to both the plain language and legislative history of Section 1503. "[C]ourts [must] enforce a rule as jurisdictional '[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional.'" *Huerta v. Ducote*, 792 F.3d 144, 151 (D.C. Cir. 2015) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006)). Because Section 1503's plain language speaks in terms of jurisdiction, venue, and the exhaustion of administrative remedies,[11] Section 1503 is the only jurisdictional statute to provide the Court with jurisdiction, and the Court is concomitantly limited by Section 1503's contours of available relief. This is because litigants are not allowed to circumvent the limitations of specific jurisdictional statutes by reference to more generic jurisdictional grounds. *See, e.g.*, *United States v. Fausto*, 484 U.S. 439, 448–49 (1988) (providing that where a specific statute both provides subject matter jurisdiction and sets out the conditions under which substantive relief may be available, resort should not be made to the

---

[11]   *See* 8 U.S.C. § 1503(a) ("An action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege and shall be filed in the district court of the United States for the district in which such person resides or claims a residence, *and jurisdiction over such officials in such cases is conferred upon those courts*." (emphasis added)), *and id.* § 1503(c) ("A final determination … that any such person is not entitled to admission to the United States shall be subject to review by any court of *competent jurisdiction in habeas corpus proceedings and not otherwise*." (emphasis added)).

general federal question statute); *see also Graham v. Ashcroft*, 358 F.3d 931, 933–35 (D.C. Cir. 2004) (Roberts, J.); *Carducci v. Regan*, 714 F.2d 171, 173–75 (D.C. Cir. 1983) (Scalia, J.); *Pulido v. Bennett*, 848 F.2d 880, 886 (8th Cir. 1988), *modified on other grounds*, 860 F.2d 296 (8th Cir. 1988) ("It is well established that when a statute specifically provides for exclusive jurisdiction in one court, the specific grant of jurisdiction takes precedence over a general grant of jurisdiction.").

## IV.    Without More Facts, It Is Impossible To Determine The Proper Defendant.

As shown above, the Plaintiffs' sole claim arises under Section 1503(a) or subsections (b) or (c). The statutory language of Section 1503(a) is clear with regard to whom a plaintiff may sue after her application for a CRBA is denied: if a "department" denies the application, then the applicant may "institute an action ... against the head of such department[.]" 8 U.S.C. § 1503(a). Here, although the Plaintiffs properly instated an action against Secretary Kerry, they are also listing Michael Alan Ratney, unknown consular officials, and the United States as Defendants. Because the latter three defendants are not the head of the department that denied the Plaintiffs' CRBA applications, Plaintiffs did not properly bring a suit against them, and this Court should dismiss those claims.[12]

Dismissal is particularly warranted for Plaintiffs' claims against the United States given that there has been no waiver of sovereign immunity. *Cf. Savorgnan v. United States*, 171 F.2d

---

[12]   The same can be argued under Section 1503(c) in relation to the Department of Homeland Security. This is because, in an application for writ of habeas corpus under that subsection, a petitioner must name "the person who has custody over him." 28 U.S.C. § 2242; *see also Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("[L]ongstanding practice confirms that in habeas challenges to present physical confinement ... the default rule is that the proper respondent is the warden of the facility where the prisoner is being held[.]"). But here again, without any facts in their Amended Complaint alleging that they are pursuing a habeas claim

155, 159 (7th Cir. 1948) (in suit for declaration of nationality, dismissing United States as a party because it had not consented to be sued). As a sovereign, the United States is immune from suit except to the extent that it has expressly consented to be sued. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Accordingly, to establish the Court's jurisdiction in a case against the United States, or its agencies or officials, a plaintiff must demonstrate a waiver of the United States' sovereign immunity. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). As the Supreme Court observed in *United States v. Mitchell*, 463 U.S. 206, 212 (1983), "It is axiomatic that the United States may not be sued without its consent and that the existence of such consent is a prerequisite for jurisdiction." Where the United States has not consented to suit, dismissal of the action is therefore required. *See* Fed. R. Civ. P. 12(h)(3). Moreover, it is a well-established principle that "[a] waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (citation omitted).

None of the statutes upon which Plaintiffs bring their claims provide an applicable waiver of sovereign immunity, especially where Plaintiffs have not exhausted the process set forth in Section 1503(b)–(c). And even if Plaintiffs were to argue for a waiver of sovereign immunity under Section 702 of the APA, that only allows such waivers when there is "no other adequate remedy in a court." *Id.* § 704; *Bowen*, 487 U.S. at 903; *Christopher Village, L.P. v. United States*, 360 F.3d 1319, 1327 (Fed. Cir. 2004) (APA "limits the government's waiver of sovereign immunity to situations in which 'no other adequate remedy' exists") (citation omitted). In this way, Section 702 of the APA complements Section 704 by preventing plaintiffs from piecing together a greater right to relief than what Congress has provided by attempting to

---

under subsection (c), however, the Plaintiffs have no one yet to sue.

supplement that relief with the APA to the extent plaintiffs are unsatisfied with their congressionally-authorized remedies. *See* 5 U.S.C. §§ 702, 704; *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2204–05 (2012).

This argument folds over, once again, onto the adequacy of the relief that Section 1503 typically provides. *Cartier*, 506 F.2d at 200 ("[T]he alternative of a judicial declaration of nationality under 8 U.S.C. § 1503 is more than adequate to provide appellee all the relief he has sought[.]") But as is true with the APA, none of the other statutes cited by the Amended Complaint provides the requisite waiver of sovereign immunity. At this point, all defendants other than Secretary Kerry must be dismissed. *See, e.g.*, *Rossello v. Marshall*, 12 F.R.D. 352, 354 (S.D.N.Y. 1952) (holding that chief of passport division was not a proper party where suit was to be brought against the head of the department of agency that denied a claimed right or privilege).

## V.    Many Of The Plaintiffs' Claims Are Barred Under The Statute Of Limitations

There are only two possible statutes of limitations in this case. Section 1503(a) provides a clear five-year statute of limitations for citizenship claims. Plaintiffs Becker, Ittai and Nachama Shulem, Yehoshua and Hadasa Mayerson, and Kenton Manning allege final agency actions that occurred more than five years before they filed their complaint on May 2, 2014. *See* ECF No. 1; 3d Am. Compl. at ¶¶ 39–40, 43, 45–46. If the Plaintiffs are attempting to pursue their claims through an alternative route, or if the Court were to rule that Section 1503 is not the exclusive basis for jurisdiction in this case, only the Shulem family, Mayerson family, and Mr. Manning's claims would still be barred by the general six-year statute of limitations. 28 U.S.C. § 2401(a). The Becker family's claim arguably accrued on November 17, 2008, *see* 3d Am. Compl. at ¶ 43,

however, and their claims are therefore only time-barred by Section 1503(a)'s five-year statute of limitations. *See Harris v. FAA*, 353 F.3d 1006, 1009 (D.C. Cir. 2004). Plaintiffs with time-barred claims must be dismissed from this action under Rule 12(b)(1). *See Mendoza v. Perez*, 754 F.3d 1002, 1018 (D.C. Cir. 2014).

Under the law of this Circuit, a statute of limitations is a condition on the government's waiver of sovereign immunity. *See P & V Enters. v. U.S. Army Corps of Eng'rs*, 516 F.3d 1021, 1026 (D.C. Cir. 2008). Because the statute of limitations is jurisdictional in nature, it cannot be waived by the parties, *see Mendoza*, 754 F.3d at 1018, and serves as an appropriate basis for a motion to dismiss. Here, Plaintiffs Becker, Shulem, Mayerson, and Manning each allege that they were aggrieved by a final agency action occurring more than five years before they filed their complaint on May 2, 2014. 3d Am. Compl. at ¶¶ 39–40, 43, 45–46. Their claims are too late and require dismissal.

## VI. The Plaintiffs' Potential *Bivens* Claims Are Similarly Time Barred And Inadequately Pleaded.

Not surprisingly, it is unclear whether Plaintiffs are attempting to invoke the Supreme Court's decision in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) for constitutional torts by raising claims against unknown officials in their individual capacities. 3d Am. Compl. at ¶ 25. Again, however, the Third Amended Complaint's addition of potential *Bivens* claims fails to allege any individualized violations of a clearly established constitutional right. *See Iqbal*, 556 U.S. at 678. And, indeed, the Plaintiffs' addition of *Bivens* claims in their Third Amended Complaint "would radically alter the scope and nature of this action; … would result in an undue delay of the proceedings; and, at least in significant respects, … would be futile." *Ewell v. U.S. Dep't of Just.*, 153 F. Supp. 3d 294, 308 (D.D.C. 2016) (Moss, J.).

36

Even if such *Bivens* claim have been properly pled, only two Plaintiffs would have claims within the District of Columbia's three-year statute of limitations. *See* D.C. Code § 12-301(8); *see e.g.*, *Sykes v. U.S. Att'y for D.C.*, 770 F. Supp. 2d 152, 155 (D.D.C. 2011) (finding *Bivens* action within the District of Columbia has three-year statute of limitations); *Hagmeyer v. Dep't of Treasury*, 647 F. Supp. 1300, 1305 (D.D.C. 1986) (same). Moreover, a *Bivens* remedy should only be implied to remedy constitutional violations if there are no special factors counseling hesitation against a judicially-created remedy. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). Here, a *Bivens* remedy is not appropriate because, as previously discussed, there is an "alternative, existing process for protecting [Plaintiffs'] interest[s]" via Section 1503. *Id.*; *see also Minneci v. Pollard*, 132 S. Ct. 617, 620 (2013) (holding that no *Bivens* remedy should be created where adequate, alternative actions at law already exist). In fact, other courts faced with similar circumstances have specifically ruled that, "to the extent Plaintiff wishes to assert that his application for a certificate of non-citizen national was 'wrongfully denied' … *Bivens* does not provide his requested relief. *Maldanado v. Clinton*, 2015 WL 1519636, at *3 (S.D. Ga. Mar. 31, 2015). "Rather, Plaintiff[s] can pursue such a cause of action pursuant to Section 1503 of Title 8 of the United States Code." *Id.*

And where, as here, Plaintiffs have failed to find or cite to *any* authority to support their innovative interpretation of "residence" under 8 U.S.C. § 1101(a)(33), Defendants should be entitled to qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

37

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that the Court should grant their motion and dismiss the above-captioned action.

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

GLENN M. GIRDHARRY
Assistant Director

By: */s/ Joshua S. Press*
JOSHUA S. PRESS
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 305-0106
joshua.press@usdoj.gov

*Attorneys for Defendants*

Dated: September 14, 2016

38

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2016, I electronically filed the foregoing MOTION

TO DISMISS with the Clerk of the Court by using the CM/ECF system, which will provide

electronic notice and an electronic link to this document to the following attorney of record:

DANIEL M. KOWALSKI
dkowalski@thefowlerlawfirm.com

DATED:  September 14, 2016

By:  */s/ Joshua S. Press*
     JOSHUA S. PRESS
     Trial Attorney
     United States Department of Justice
     Civil Division