# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BARAK CHACOTY, *et al.*,<br><br>    *Plaintiffs*,<br><br> v.<br><br>REX W. TILLERSON, U.S. Secretary of State, *et al.*,<br><br>    *Defendants.* | Civil Action No. 14-764 (RDM) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs are eighteen Israeli citizens[1] and a Canadian citizen, all of whom were born outside the United States. They contend that they are U.S. citizens by birth pursuant to 8 U.S.C. § 1401(c). That provision confers birthright citizenship on a person born abroad if both parents are U.S. citizens and one parent "has had a residence in the United States" prior to the person's birth. *Id.* Each of the Plaintiffs applied to the State Department for proof of citizenship in the form of Consular Reports of Birth Abroad ("CRBAs"). The State Department either denied their CRBA applications or, for two of the Plaintiffs, revoked already-issued CRBAs. The Department's rationale: Plaintiffs are not, in fact, U.S. citizens because none of their parents satisfy the residency requirement of § 1401(c).

Plaintiffs filed this action against the United States, Secretary of State Rex Tillerson, and other State Department officials (collectively, "the Department") asserting claims under the Administrative Procedure Act ("APA") and the Due Process Clause of the Fifth Amendment.

---

[1] Technically, sixteen of these individuals are minors whose parents have brought this action on their behalf. *See* Dkt. 28 at 5–8 (Am. Compl. ¶¶ 2–11, 14–20). For the sake of concision, however, the Court uses the term "Plaintiffs" to denote the minors, not their parents.

They contend that the State Department applied an impermissibly strict interpretation of the term "residence" in denying their applications, which is contrary to the plain terms of § 1401(c); that the Department departed from its prior, longstanding interpretation of the statute without following the requirements of the APA and the Department's Foreign Affairs Manual; and that the Department has not applied its new reading of the statute consistently nor embodied that reading in Department "policy."

The Department moves to dismiss on four grounds. Its principal contention is that the Court lacks subject matter jurisdiction because Plaintiffs' sole remedy lies in 8 U.S.C. § 1503. Invoking the § 1503 remedy requires either (1) presence in the United States, which Plaintiffs do not allege, or (2) a set of conditions that Plaintiffs have not fulfilled: application for a certificate of identity, presence at a "port of entry" to the United States, an application for admission, and, if necessary, a petition for a writ of habeas corpus. Second, the Department argues that, under the general six-year statute of limitations for claims against the United States, 28 U.S.C. § 2401(a), the claims of four of the Plaintiffs are untimely and that the Court, accordingly, lacks jurisdiction over those claims. Third, the Department contends that all but two of the remaining Plaintiffs have failed to allege facts sufficient to state claims for relief under the APA. Finally, the Department disputes the adequacy of Plaintiffs' due process claims.

As explained below, the Court concludes that for the most part, it has subject matter jurisdiction because Plaintiffs' claims arise under federal law and fall within the APA's waiver of sovereign immunity; it lacks subject matter jurisdiction over the claims of four Plaintiffs, which are time barred; and the Department's limited challenges to the factual specificity of Plaintiffs' individual APA claims and due process claims are unpersuasive. The Court will, accordingly, **GRANT** the Department's motion to dismiss in part and **DENY** it in part.

## I. BACKGROUND

**A.     Statutory Framework**

"The general rules for acquiring U.S. citizenship are found in 8 U.S.C. § 1401." *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686 (2017); *see* Immigration and Nationality Act of 1952, Pub. L. No. 82-414, § 301(a)(3), 66 Stat. 163, 235–36.  That section sets forth "rules for determining who 'shall be nationals and citizens of the United States at birth' by establishing a range of residency and physical-presence requirements calibrated primarily to the parents' nationality and the child's place of birth." *Morales-Santana*, 137 S. Ct. at 1686 (quoting 8 U.S.C. § 1401).  The subsection relevant here, § 1401(c), confers birthright U.S. citizenship on any person "born outside of the United States . . . of parents both of whom are citizens of the United States and one of whom has had a residence in the United States . . . prior to the birth of such person." 8 U.S.C. § 1401(c).  The term "residence" is defined as "the place of general abode," which in turn refers to "[a person's] principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(a)(33).

Congress has charged the Secretary of State with "the administration and the enforcement of . . . immigration and nationality laws relating to . . . the determination of nationality of a person not in the United States." 8 U.S.C. § 1104.  Pursuant to that authority, the Secretary may issue Consular Reports of Birth Abroad—or CRBAs—to U.S. citizens born abroad "[u]pon application and the submission of satisfactory proof of birth, identity and nationality." 22 C.F.R. § 50.7(a).  The Secretary is also authorized to cancel a CRBA that was "illegally, fraudulently, or erroneously obtained." 8 U.S.C. § 1504(a).  The issuance or rescission of a CRBA, however, "affect[s] only the document and not the citizenship status of the person." 8 U.S.C. § 1504(a).

This is because CRBAs, like passports, do not confer citizenship; rather, they merely provide proof of one's status as a citizen.  *See* 22 U.S.C. § 2705.

In addition to prescribing conditions for birthright citizenship, the Immigration and Nationality Act provides a remedy for anyone who is denied a "right or privilege" by the federal government on "the ground that [s]he is not a national of the United States."  8 U.S.C. § 1503. That remedy, codified at 8 U.S.C. § 1503, encompasses the rejection of a CRBA application and the revocation of a CRBA.  *See Xia v. Tillerson*, 865 F.3d 643, 655 (D.C. Cir. 2017).  An aggrieved party seeking to take advantage of § 1503 must take one of two paths.  If she is "within the United States," § 1503(a) creates a cause of action allowing her to seek a declaration that she is a U.S. national.  8 U.S.C. § 1503(a).  She need only make "a prima facie case establishing [her] citizenship."  *Perez v. Brownell*, 356 U.S. 44, 47 n.2 (1958), *overruled on other grounds by Afroyim v. Rusk*, 387 U.S. 253 (1967).  The government must then produce "clear, unequivocal, and convincing" evidence to rebut her showing.  *Id.* (citation omitted).

If the aggrieved party is "not within the United States," however, her route to relief under § 1503 is more difficult.  Her starting point is § 1503(b), which permits an aggrieved party to apply for a "certificate of identity" from the U.S. diplomatic or consular officer in the country in which she resides.  8 U.S.C. § 1503(b).  If the officer declines to issue a certificate of identity, the applicant may appeal that decision to the Secretary of State.  *Id.*  But, even if she successfully obtains a certificate of identity, the process does not end there; rather, the aggrieved party must then travel to the United States and apply for admission at a port of entry as a U.S. citizen.  8 U.S.C. § 1503(c).  If the Attorney General determines that she is not a U.S. citizen and therefore "not entitled to admission," her final recourse is to seek judicial review of the Attorney General's nationality determination by filing a petition for a writ of habeas corpus.  *Id.*

## B. Factual Background

Plaintiffs' Third Amended Complaint,[2] Dkt. 28, sets forth the relevant facts, which the Court must accept as true for purposes of the Department's motion to dismiss. *See Wood v. Moss*, 134 S. Ct. 2056, 2065–67 & n.5 (2014); *Xia*, 865 F.3d at 646.

Of the nineteen Plaintiffs, sixteen are minor Israeli citizens from nine different families who reside in Israel and applied for CRBAs. *See* Dkt. 28 at 5–8 (Am. Compl. ¶¶ 2–11, 14–20). Their requests were rejected by officials at the U.S. Consulate General in Jerusalem; the earliest denial occurred in November 2007, the latest in April 2016. *Id.* at 10–11 (Am. Compl. ¶¶ 33, 39, 44). Two additional Plaintiffs, Kayla and Chana Sitzman, are Israeli citizens residing in Israel whose CRBAs were revoked. *Id.* at 7, 10 (Am. Compl. ¶¶ 12–13, 32). The Consulate General cancelled both CRBAs in August 2010. *Id.* at 10 (Am. Compl. ¶¶ 34–35). After the Sitzmans timely appealed, the State Department affirmed the revocations in February 2012. *Id.* at 10 (Am. Compl. ¶¶ 34–35). The final Plaintiff, Kenton Manning, is a Canadian citizen residing in Canada. *Id.* at 8 (Am. Compl. ¶ 21). Manning's "claim to U.S. [c]itizenship" was denied in July 2006. *Id.* at 11–12 (Am. Compl. ¶ 45). The State Department affirmed the decision in May 2007. *Id.* at 12 (Am. Compl. ¶ 46).

According to the complaint, each Plaintiff's CRBA was either not approved or revoked based on the State Department's conclusion that neither of the applicant's parents satisfied § 1401(c)'s residency requirement. *Id.* at 10 (Am. Compl. ¶¶ 32–33). Although the complaint does not set forth the rationales or decisions provided by the State Department in each case, it provides the following "example[s]." *Id.* at 13 (Am. Compl. ¶ 49).

---

[2] For ease of reference, unless otherwise noted, the Court refers to the Third Amended Complaint simply as "the complaint."

First, in denying the application submitted on behalf of the three Chacoty children, the U.S. Consulate General in Jerusalem concluded that "[t]he activities described in [the] affidavits [submitted with the application] are the normal activities in which a person engages while on visit.  There is no indication that the United States was ever the place of general abode."  *Id.* (Am. Compl. ¶ 49).  Second, in denying the application submitted on behalf of the Spector child, the Consulate General wrote, "Based on a thorough review of the information contained in your application . . . it has been determined that your child did not acquire citizenship at birth because neither [parent] had a 'residence' in the United States prior to the child's birth."  *Id.* (Am. Compl. ¶ 50).  Third, in revoking the CRBAs issued to Chana and Kayla Sitzman, the State Department explained that "[t]he sole issue for decision at the revocation hearing was whether there was sufficient evidence . . . that [their mother's] visits to the United States constituted residence," and the deciding official found that "the character of [her] visits to the United States d[id] not constitute 'residence' within the meaning of" § 1401(c).  *Id.* (Am. Compl. ¶ 51).  Finally, Plaintiffs attach to their complaint a letter from the Consul to the Consulate General rejecting the CRBA application of the Nachshon child, noting that the trips that his parents took to the United States before his birth never lasted longer than two months and concluding that those "short trips to the U.S. were visits and indicate [that they] never established a residence there."  Dkt. 28-4 at 1.

According to Plaintiffs, the State Department's decisions denying their CRBA applications constitute a substantial departure from prior practice and, indeed, a departure from the practice at other embassies and consulates around the world.  Until 2007, Plaintiffs assert, the Department "published and disseminated a fact sheet" explaining that "if both parents were [U.S.] citizens, they could transmit citizenship to their children provided that one of the parents

could show one day of physical presence in the United States." Dkt. 28-1 at 1; *see* Dkt. 28 at 32 (Am. Compl. Conclusion).

At some point, however, the Department adopted a new approach that requires more to establish "residence." This new approach is reflected in "updates" to the Department's Foreign Affairs Manual and in at least one administrative decision, which is also attached to the complaint. *See* Dkt. 28 at 15–16 (Am. Compl. ¶ 61–62); Dkt. 28-2 (final administrative decision). Under that new approach, the consular officer must "take[] into account the nature and quality of the person's connection to the place." Dkt. 28 at 15–16 (Am. Compl. ¶ 61) (quoting 7 FAM 1133.5(b)). As a result, more is required "than a temporary presence": "visits to the United States," without more, "are insufficient to establish residency for purposes of citizenship transmission under" § 1401(c). *Id.* (Am. Compl. ¶ 61) (quoting 7 FAM 1133.5(b)). Among other factors, the Department now considers whether the "person owns or rents property" and "the duration of [the] person's stay in a particular place in the United States." *Id.* (Am. Compl. ¶ 61) (quoting 7 FAM 1133.5(d), (f)); *see also* Dkt. 28-2 at 2 (final administrative decision) (noting that "[r]esidence is not determined solely by the length of time spent in a place, but also takes into account the nature and quality of the person's connection to the place," and that "[g]enerally, visits to the United States are insufficient," and, instead, the consular official must engage in "a close examination, on a case[-]by[-]case basis, of the facts related to one's stay in the United States").

The complaint alleges that the State Department further revised the relevant portions of the Foreign Affairs Manual on February 24, 2016. Dkt. 28 at 17 (Am. Compl. ¶ 66). The complaint does not, however, describe those revisions or whether or how they might bear on Plaintiffs' claims, all of which involve determinations made before February 24, 2016. Rather,

the complaint merely asserts that these revisions demonstrate that the State Department's "interpretation" of § 1401(c) is a "moving target." *Id.* (Am. Compl. ¶¶66).

Based on these allegations, Plaintiffs seek declaratory and injunctive relief, including an order directing that the State Department issue CRBAs to all of the Plaintiffs, except Kenton Manning, "who should be issued a passport." Dkt. 28 at 33 (Prayer for Relief). This relief is warranted, in their view, for several reasons. They contend that the Department has misinterpreted § 1401(c) and has—at least implicitly—impermissibly read an "intent" standard into the statute. They also contend that the Department committed procedural errors in departing from its prior interpretation of the statute by failing (1) to engage in notice and comment rulemaking; (2) to follow the standards for revising the Foreign Affairs Manual set forth in the manual itself; and (3) to adopt a policy applicable to all consular offices. They conclude that, as a result of these errors, the Department has violated their rights under the Administrative Procedure Act and the Due Process Clause of the Fifth Amendment.

## II.  ANALYSIS

The Department moves to dismiss on multiple grounds. It argues that the Court lacks subject matter jurisdiction; that several claims are untimely; and that the complaint lacks sufficient detail to state a claim or to identify the proper defendants. The Court will consider each of these defenses in turn.

### A.  Subject Matter Jurisdiction

The Court starts, as it must, with subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). In suits against the government, subject matter jurisdiction turns on at least "two different . . . questions." *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006). "First, has Congress provided an affirmative grant of subject-matter

jurisdiction?  And, second, has Congress waived the United States's immunity to suit?"  *Yee v. Jewell*, 228 F. Supp. 3d 48, 53 (D.D.C. 2017).  "Only if Congress has done both" may the Court reach the merits of the challenged claims.  *Id.*

1. *Affirmative Grant of Subject Matter Jurisdiction*

Plaintiffs assert claims under the APA and the Due Process Clause.  Because those claims are premised on federal law, Plaintiffs have properly invoked the Court's federal question jurisdiction.  28 U.S.C. § 1331; *see also Califano v. Sanders*, 430 U.S. 99, 105 (1977) ("[Section 1331] confer[s] jurisdiction on federal courts to review agency action . . . .").  That is enough to satisfy the first jurisdictional requirement.[3]

2. *Sovereign Immunity*

Sovereign immunity is also "jurisdictional in nature" and, "[a]bsent a waiver, [it] shields the Federal Government and its agencies from suit."  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").  The immunity of the United States extends to individual "officials [who are sued] in their *official* capacities."  *Clark v. Library of Cong.*, 750 F.2d 89, 103 (D.C. Cir. 1984).

---

[3]  Plaintiffs also contend that jurisdiction exists under the APA, 5 U.S.C. § 701 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Mandamus Act, 28 U.S.C. § 1361.  With respect to the APA and the Declaratory Judgment Act, they are mistaken.  Neither statute constitutes an independent grant of subject matter jurisdiction.  *See Califano*, 430 U.S. at 105 (APA); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950) (Declaratory Judgment Act).  And, although the Mandamus Act does, at times, confer jurisdiction on federal courts, it "is a law of last resort, available 'only if [the plaintiff] has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty.'"  *Yee*, 228 F. Supp. 3d at 53 (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)).  Because 28 U.S.C. § 1331 provides a sufficient grant of subject matter jurisdiction, the Court need not pause over the high hurdle posed by the Mandamus Act.

"[T]he terms of [the United States's] consent to be sued . . . define [a] court's jurisdiction to entertain the suit."  *United States v. Sherwood*, 312 U.S. 584, 586 (1941).

Although Plaintiffs do not expressly address this issue, they at least hint that the APA, 5 U.S.C. § 702, provides the requisite waiver.  *See* Dkt. 28 at 9 (Am. Compl. ¶ 30).  That premise, at least as far as it goes, is correct.  The first clause of § 702 waives the United States's immunity in actions "seeking relief other than money damages."  5 U.S.C. § 702; *see Cohen v. United States*, 650 F.3d 717, 723 (D.C. Cir. 2011).  This waiver, importantly, applies to "*any* suit that meets its conditions, 'whether under the APA or not.'"  *Yee*, 228 F. Supp. 3d at 54 (quoting *Trudeau*, 456 F.3d at 186).  Section 702 then carves out two exceptions to that waiver:  "Nothing herein (1) affects other limitations on judicial review . . . ; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."  5 U.S.C. § 702.  This proviso "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes."  *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012).

Against this backdrop, the Court must answer two questions: "Does [§ 702] waive sovereign immunity with respect to [Plaintiffs'] claims, and does [some other statute] provide 'other limitations on judicial review'" or forbid the relief sought?  *Cohen*, 650 F.3d at 722 (quoting 5 U.S.C. § 702).  The answer to the first question is straightforward: Plaintiffs seek only declaratory and injunctive relief, not money damages.  Their APA and Due Process Clause claims, therefore, fall within the APA's affirmative waiver of sovereign immunity.

The answer to the second question, however, requires more extensive analysis; the Court must consider whether the proviso of § 702 "takes away" what the preceding

portion of § 702 grants. *Harrison v. Bureau of Prisons*, 248 F. Supp. 3d 172, 182

(D.D.C. 2017). The Department argues that this case falls within the proviso by virtue of

three different statutes: (1) 8 U.S.C. § 1503, which the Department contends provides an

exclusive remedy and thus "impliedly forbids the relief" Plaintiffs seek; (2) the "no other

adequate remedy" provision of the APA, 5 U.S.C. § 704, which the Department argues

limits the APA's waiver of sovereign immunity; and (3) the general six-year statute of

limitations in 28 U.S.C. § 2401(a), which the Department argues abrogates the waiver of

sovereign immunity for untimely claims.

      a.   <u>8 U.S.C. § 1503</u>

The Department devotes the lion's share of its motion to its contention that § 1503

constitutes an exclusive remedy and thus impliedly forbids the relief sought by the

Plaintiffs under other provisions of law. The Court is unpersuaded.

As explained above, § 1503 provides two paths to challenge the denial of a "right

or privilege as a national of the United States" on the ground that the applicant "is not,"

in fact, "a national of the United States." 8 U.S.C. § 1503. The first path is available

only to those who are "within the United States." *Id*. § 1503(a). The second path, in

contrast, applies to those outside the United States, and it requires that the aggrieved

party take a number of steps before obtaining judicial review. *Id.* § 1503(b), (c).

According to the Department, Plaintiffs have failed to allege facts or otherwise to

demonstrate that any of them have followed either path. The specified procedures, the

Department adds, establish the exclusive avenue for establishing jurisdiction over claims

like those asserted here. And, because the § 1503 remedy is exclusive, it impliedly precludes review under the APA or any other law.[4]

If the Department were correct that § 1503 establishes an exclusive remedy, the waiver of sovereign immunity contained in § 702 of the APA would be unavailable, and the Court would lack jurisdiction. *See Sagar v. Lew*, 211 F. Supp. 3d 262, 268 (D.D.C. 2016). The Supreme Court, however, has expressly rejected the premise of the Department's argument. In *Rusk v. Cort*, 369 U.S. 367 (1962), *abrogated on other grounds by Califano*, 430 U.S. 99, the Court confronted a question similar to that posed here, and it held that "Congress did not intend to foreclose lawsuits by claimants . . . who do not try to gain entry to the United States before prevailing in their claims to citizenship," *id.* at 379. The Court provided two principal reasons for reaching that conclusion. First, § 1503(b) and (c) provides that an aggrieved party "may" apply for a certificate of identity and "may" apply for admission into the United States. *Id.* at 375. The Court, accordingly, concluded that "[t]he language of the section shows no intention to provide an exclusive remedy;" that is, the language of the statute is permissive, not mandatory. *Id.* (internal quotation marks and citation omitted). Second, the legislative history shows that "the purpose of § [1503(b) and (c)] was to cut off the opportunity which aliens had abused . . . to gain fraudulent entry to the United States by prosecuting

---

[4] At the same time the Department argues that Plaintiffs have not brought any claims under § 1503, it argues that the Court should dismiss their (non-existent) § 1503 claims. The latter contention is without foundation. To be sure, Plaintiffs' opposition states that they are "willing . . . to posit [§] 1503 as a plausible vehicle for this litigation," Dkt. 33-1 at 2, but their complaint does not, in fact, assert a cause of action under that statute. It goes without saying that the Court ought not adjudicate the merits of hypothetical claims that Plaintiffs could have, but did not, assert. For the same reason, the Court need not address the Department's argument that it is "[i]mpossible" to determine the proper defendant for Plaintiffs' hypothetical § 1503 claims. *See* Dkt. 31-1 at 44.

spurious citizenship claims," and not to limit the relief otherwise available to those, like Plaintiffs here, who remain outside the United States. *Id.* at 379. As the Supreme Court further explained, "[t]he teaching" of earlier decisions, which were left unaffected by § 1503(b) and (c), "is that the Court will not hold that the broadly remedial provisions of the [APA] are unavailable to review administrative decisions under the 1952 [Immigration and Nationality] Act in the absence of clear and convincing evidence that Congress so intended." *Id.* at 379–80. *Cort*, therefore, is clear: § 1503 is not an exclusive remedy.[5]

Nor is the Court convinced by the Department's efforts to distinguish *Cort*. It argues, first, that the plaintiff in *Cort*, unlike the Plaintiffs in this case, had been previously recognized by the United States as a citizen and, second, that there was a "near certainty" that the plaintiff in *Cort* would have been "arrested and prosecuted" if he had returned to the United States because of a pending indictment. Dkt. 34 at 7–8; *see Cort*, 369 U.S. at 375. But the Supreme Court's reasoning in *Cort* sweeps more broadly than that. *Cort*'s holding—that "a person outside the United States who has been denied a right of citizenship is not confined to the procedures prescribed by [§ 1503](b) and (c)"—rested on the text and legislative history of § 1503. 369 U.S. at 379. It was not confined to the particular facts of the case. Thus, although the Department has identified

---

[5] In *Califano v. Sanders*, the Supreme Court overruled *Cort* to the extent that *Cort* "assumed . . . that the APA is an independent grant of subject-matter jurisdiction." 430 U.S. at 105. *Cort*'s holding that § 1503 is not an exclusive remedy, however, remains good law. *See Rafeedie v. Immigration & Naturalization Serv.*, 880 F.2d 506, 511 (D.C. Cir. 1989) (citing *Cort* and reiterating that § 1503 does not foreclose claims under the APA); *accord Xia*, 865 F.3d at 658 (remanding case to district court "for further consideration of the APA claims, or for transfer of those claims together with the section 1503 claims").

factual distinctions between *Cort* and this case, neither distinction makes a difference.

Section 1503 does not implicitly forbid the relief sought here.

      b.  <u>Section 704 of the APA</u>

The Department also posits that another provision of the APA, 5 U.S.C. § 704,

restricts § 702's waiver of sovereign immunity to instances in which there is "no other

adequate remedy in a court." Dkt. 31-1 at 45 (quoting 5 U.S.C. § 704). Section 704

provides that "[a]gency action made reviewable by statute and final agency action for

which there is no other adequate remedy in a court are subject to judicial review." 5

U.S.C. § 704. Section 704, however, unlike § 702, is neither a grant nor a limitation on

the *jurisdiction* of the federal courts; instead, it defines the scope of review available

under the APA itself. *Trudeau*, 456 F.3d at 185. This is a critical distinction because the

APA's waiver of sovereign immunity and its cause of action are not coterminous; the

waiver of sovereign immunity applies to nonmonetary claims against the United States

"regardless of whether the elements of an APA cause of action are satisfied." *Id.* at 187.

As a result, the waiver of sovereign immunity "applies regardless of whether the

[challenged conduct] constitutes 'final agency action'" under § 704, *id.*, and, more

importantly for present purposes, regardless of whether an "adequate remedy" is

available under another provision of law.[6] The Court does not foreclose the possibility

---

[6] The Department also invokes § 704 to assert that the APA does not provide an affirmative grant of subject matter jurisdiction "unless a plaintiff is challenging a 'final agency action,'" Dkt. 31-1 at 38 (quoting 5 U.S.C. § 704), and argues that "the State Department's denial of CRBAs does not constitute final agency action," *id.* To the extent the Department means that the absence of a final agency action undercuts the waiver of sovereign immunity in § 702, that argument fails for the reasons described above. And, to the extent the Department means that the absence of a final agency action undercuts the statutory grant of subject matter jurisdiction, that argument fails because 28 U.S.C. § 1331—and not the APA—confers subject matter jurisdiction over

that § 704 may provide a basis to challenge the legal sufficiency of Plaintiffs' claims—as opposed to the Court's jurisdiction. The Department, however, has not made that argument.

### c. General Statute of Limitations

The Department advances one final theory for why the United States has not waived its sovereign immunity. Unlike its first two arguments, this one hits the mark—at least with respect to four of the Plaintiffs: the Mayerson child, the Shulem children, and Kenton Manning. Dkt. 31-1 at 46–47.

28 U.S.C. § 2401(a) bars "every civil action commenced against the United States . . . unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). "Unlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity, and as such must be strictly construed." *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 56 (D.C. Cir. 1987); *see also P & V Enters. v. U.S. Army Corps of Eng'rs*, 516 F.3d 1021, 1026 (D.C. Cir. 2008). As a result, because Plaintiffs filed their original complaint on May 2, 2014, Dkt. 2, § 2401(a) bars any claim that accrued before May 2, 2008.

To decide which, if any, claims are barred, the Court must first determine when the claims accrued. Neither party grapples with this issue. The Department simply posits, without explanation, that the statute of limitations began to run when each of the CRBA applications was denied. *See* Dkt. 31-1 at 46–47. Plaintiffs, for their part, do not challenge that premise but,

---

Plaintiffs' claims. Indeed, as the Department itself stresses, the APA is not a jurisdiction-conferring statute, *see* Dkt. 31-1 at 40–41 (citing *Califano*, 430 U.S. at 105), and, as the D.C. Circuit has held, § 704's "finality requirement [is] not jurisdictional," *Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011).

instead, argue that "any Plaintiffs who arguably fall outside of any applicable statutes of limitation[s] have reapplied, or are in the process of reapplying, for CRBAs, thus restarting any applicable clock." Dkt. 28 at 30 (Am. Compl. ¶ 93).

In the typical case, a right of action challenging administrative action accrues on the date of the final agency action. *See Harris v. FAA*, 353 F.3d 1006, 1010 (D.C. Cir. 2004). This means, at least for purposes of Plaintiffs' APA claims, that their causes of action accrued when the State Department took an "action . . . mark[ing] the 'consummation' of the agency's decisionmaking process;" that was not of a "tentative or interlocutory nature;" and that had "legal consequence[]." *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). The D.C. Circuit has further explained that an agency action remains interlocutory until the claimant has exhausted "statutorily required or permitted review," but, "where no formal review procedure exist[s], the cause of action accrue[s] when the agency action occur[s]." *Impro Prods., Inc. v. Block*, 722 F.2d 845, 850–51 (D.C. Cir. 1983).

In some tension with its statute of limitations argument, the Department argues elsewhere in its brief that "the State Department's denial of CBRAs does not constitute final agency action." Dkt. 31-1 at 38. If true, that would mean that Plaintiffs' claims are premature—not that they are untimely. The Court, however, is unconvinced, at least on the present record, that the denial of a CBRA does not constitute a final agency action. The Department's argument to the contrary collapses back on its argument that § 1503 provides the exclusive remedy for the denial of a CRBA. It argues, in short, that the "denials of the CRBAs are an intermediate step in a regulatory and statutory structure that culminates in the process outlined in Section 1503"—that is, the process that requires one to obtain a certificate of identity, appear at the U.S. border, and

seek entry. *Id.* at 39. But, for the reasons discussed above, the Court has already concluded that Plaintiffs are not required to proceed under § 1503 and that, in fact, they have not done so.

Were some other formal process of agency review required or permitted, that might well render Plaintiffs' claims premature. Neither party, however, has identified any such process. To be sure, the State Department's Foreign Affairs Manual appears to permit an applicant's family to "submit additional evidence at any time" and to seek "reconsideration of the case." 7 FAM 1444.3-2(B)(7); *see also* 7 FAM 1445.9(b) ("No formal application or filing of an appeal need be taken when submitting such evidence."). But that process, at least as described in the quoted portions of the Foreign Affairs Manual, lacks the formality or structure required to postpone the finality of the denial of a CRBA; to the contrary, it permits the submission of additional evidence "at any time" and would, thus, delay final action indefinitely in most, if not all, cases.

Plaintiffs add their own twist, alleging that "any Plaintiffs who arguably fall outside of any applicable statute of limitations have reapplied, or are in the process of reapplying for CRBAs, thus restarting any applicable clock." Dkt. 28 at 30 (Compl. ¶ 93). Like the Department's argument, that argument is potentially self-defeating; to the extent those Plaintiffs are still pressing their claims before the State Department, they are not time-barred, but they are premature. Once again, however, the Court is unconvinced, at least on the present record, that Plaintiffs' claims remain inchoate. As the Supreme Court has observed:

> [W]here a petition for reconsideration has been filed within a discretionary review period specifically provided by the agency (and within the period allotted for judicial review of the original order), . . . the petition tolls the period for judicial review of the original order, which can therefore be appealed to the courts directly after the petition for reconsideration is denied.

*Bhd. of Locomotive Eng'rs*, 482 U.S. at 279; *see also Columbia Falls Aluminum Co. v. EPA*, 139 F.3d 914, 919 (D.C. Cir. 1998) ("A party's pending request for agency reconsideration renders 'the underlying action nonfinal . . . .'"); *Riffin v. Surface Transp. Bd.*, 331 F. App'x 751, 752

(D.C. Cir. 2009) ("By filing a timely petition to reopen, [the plaintiff] rendered the Board's decision nonfinal . . . ."); *Bristol-Myer Squibb Co. v. Kappos*, 841 F. Supp. 2d 238, 242–43 (D.D.C. 2012). Here, however, the Court does not understand Plaintiffs to allege that the Department is in the process of considering requests for reconsideration, much less requests filed within "a discretionary review period specifically provided by the agency." They allege, instead, that they have "reapplied" for CRBAs. The Court is unaware of any authority supporting the proposition that a new application for relief restarts the statute of limitations with respect to an earlier application, which was denied in a final agency determination. Accepting that argument, moreover, would prove far too much for the reasons discussed in the preceding paragraph. It would, in effect, render the statute of limitations meaningless because an aggrieved party who failed to bring a timely challenge could resuscitate the untimely claim by "reapplying" for relief. It is, of course, possible that the applicant could bring an action challenging the denial of the new application (without regard to the earlier application), but that question is not before the Court.

The Court, accordingly, concludes that any Plaintiff who received a final denial (including the resolution of any administrative appeal) of his or her CRBA application before May 2, 2008, has not brought a timely challenge to that decision. The claims of the Mayerson Plaintiff (application denied on February 25, 2008) and the claims of the two Shulem Plaintiffs (applications denied on November 15, 2007) are thus untimely. Dkt. 28 at 11 (Am. Compl. ¶¶ 39, 40). In addition, Kenton Manning's "claim to U.S. [c]itizenship" was initially denied on July 3, 2006, and affirmed by the State Department on May 24, 2007, and is, therefore, also untimely. *Id.* at 11–12 (Am. Compl. ¶¶ 45–46).

The Court will, accordingly, dismiss the claims of the Mayerson Plaintiff, the Shulem Plaintiffs, and Kenton Manning for lack of subject matter jurisdiction.

**B.      Adequacy of Complaint**

1.      *Individual APA Claims*

Although the Department raises a host of issues that it says deprive the Court of jurisdiction, its challenge to the legal sufficiency of Plaintiffs' claims on the merits is narrowly focused.  It argues that, with the exception of the Sitzman Plaintiffs, Plaintiffs have failed "to allege *any* particularized facts relating to their parents' time in the United States or whether [one of their parents] had a residence in the United States before the birth of their children outside the United States."  Dkt. 31-1 at 28.  As a result, the Department concludes, Plaintiffs have not stated plausible claims for relief under any interpretation of § 1401(c)'s residency requirement.  *Id.* at 27.

The complaint alleges that the Department denied Plaintiffs' applications for CRBAs "on [the] grounds that" the U.S. citizen parent did "not satisf[y]" the residency requirement of § 1401(c).  Dkt. 28 at 12 (Am. Compl. ¶ 48).  The complaint further asserts that the Department, "[i]n the denial letters," explained that the parents' "activities in the United States" were not "the activities of someone residing in the United States."  *Id.* (Am. Compl. ¶ 48).  These allegations permit the reasonable inference that at least one of the parents of each Plaintiff has, in fact, spent *some* period of time in the United States before the Plaintiff was born and that § 1401(c)'s other requirements were satisfied.

Because the thrust of the Department's motion to dismiss turns on the lack of *factual* specificity in the complaint, and not on the *legal* sufficiency of Plaintiffs' theory that a single

day's presence in the United States is sufficient, the Court will deny the Department's motion and will leave for another day the question whether a single day or very brief visit is sufficient.[7]

2. *Due Process Claims*

The Department notes that "it is unclear" whether Plaintiffs intend to assert their constitutional due process claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and, out of caution, it raises several reasons why the Court should dismiss any *Bivens* claims that Plaintiffs might be deemed to have brought. Dkt. 31-1 at 47–48. In *Bivens*, the Supreme Court "held that . . . it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable searches and seizures." *Zigler v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). Because Plaintiffs have not sought damages, *see* Dkt. 28 at 33 (Am. Compl. Prayer), their due process claims are not grounded in *Bivens*.

The Department has not raised any other objections to Plaintiffs' due process claims. The Court will, therefore, deny the Department's motion to dismiss these claims.

---

[7] To the extent Plaintiffs intend to argue that their parents had more substantial contact with the United States and that the Department erred in denying their CRBA applications because of that more substantial contact, that theory is not set forth in the complaint.

**CONCLUSION**

For the reasons stated above, it is hereby **ORDERED** that the Department's motion to dismiss, Dkt. 31, is hereby **GRANTED** in part and **DENIED** in part.

**SO ORDERED**.


/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: January 16, 2018